**Billy Roy TYLER, Plaintiff-Appellant,**

v.

**MMES. PASQUA & TOLOSO, et al.,
Defendants-Appellees.**

**No. 83–4488.**

United States Court of Appeals,
Fifth Circuit.

Dec. 10, 1984.

Robert G. Pugh, Jr., (court-appointed) Shreveport, La., for plaintiff-appellant.

Ms. Pasqua, Ms. Toloso, pro se.

Jerry H. Bankston, Dept. of Health & Human Resources, Baton Rouge, La., for defendants-appellees.

Before RUBIN, POLITZ and GAR-WOOD, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The Food Stamp Act of 1964,[1] as amended, provides that assistance shall be furnished by states participating in the food stamp program to all eligible households that apply.[2] The Act and the regulations adopted to implement it require the state to furnish expedited service to certain households.[3] A food stamp claimant who alleges that he was not afforded expedited service asserts a private cause of action to enforce this statute and regulation. We hold that the federal courts have jurisdiction of such a claim but that neither the statute nor the regulation creates a private cause of action to enforce expedited service.[4] We therefore affirm the judgment of dismissal.

Billy Roy Tyler applied to the Shreveport office of the Office of Family Security, a

---

1. 7 U.S.C. § 2011 et seq.

2. 7 U.S.C. § 2014(a).

3. 7 C.F.R. § 273.2(i), implementing 7 U.S.C. § 2020(e)(9).

4. It is not clear from the record whether Tyler seeks relief for only the denial of expedited consideration or also for failure to issue food stamps. If we construe the pro se petition broadly to include the latter, our analysis does not change.

division of the Louisiana Department of Health and Human Resources, for food stamps. Soon thereafter, he filed a pro se complaint in federal court against officials of the Office of Family Security stating that he was "denied ... food stamps and instead harangued for hours and moments." The complaint was referred automatically to a magistrate for review, report and recommendation, in accordance with a standing order of the district court. Without requiring service of the complaint, awaiting an answer, or holding a hearing of any kind, the magistrate recommended *sua sponte* that the action be dismissed for failure to state a cause of action for which the plaintiff was entitled to relief. The district court rendered judgment in accordance with his recommendation. Upon the filing of an appeal, we appointed counsel to represent the plaintiff.

 The state contends that the district court lacked subject matter jurisdiction of this action and that, hence, the appeal should be dismissed. As required by the Act as a condition to a state's receipt of federal assistance in providing food stamp benefits, the State of Louisiana has adopted statutes and regulations establishing a system for the administration of the food stamp program. The state argues that Tyler's cause of action actually arises under the Louisiana statutes and regulations, and not under the federal Act and regulations. This contention lacks merit. Liberally construed, as the pro se complaint must be,[5] it alleges that the DHHR employees acted in violation of the federal statute and regulations. It therefore presents a classic instance of invoking the aid of a federal court to interpret the scope and effect of federal law.[6] A state's implementation of a federal program cannot oust

federal subject matter jurisdiction when a litigant claims that state official action violates federal provisions.

 The state argues that 28 U.S.C. § 1343, giving federal courts jurisdiction over claims raising violations of the Constitution or of statutes providing "equal" or "civil" rights,[7] should be considered the exclusive jurisdictional basis for § 1983 actions. Accordingly to the state, § 1343 and § 1983 are companion statutes, and federal jurisdiction extends only to those § 1983 actions based on violations of the Constitution or of "equal" or "civil" rights statutes. This ignores the general federal question jurisdiction granted by 28 U.S.C. § 1331 over actions arising under the laws of the United States. The jurisdiction conferred by § 1343 is not exclusive, but is in addition to federal question jurisdiction. This interpretation is supported by dicta in a Supreme Court opinion, *Maine v. Thiboutot,*[8] in which the Court said:

> There is no inherent illogic in construing § 1983 more broadly than § 1343(3) was construed in *Chapman v. Houston Welfare Rights Organization, supra.* It would only mean that there are statutory rights which Congress has decided cannot be enforced in the federal courts unless 28 U.S.C. § 1331(a)'s $10,000 jurisdictional amount is satisfied.

Now that § 1331 no longer contains a jurisdictional amount, Tyler's action fits perfectly within this description, and may be brought under § 1331 jurisdiction.

We turn to the merits: Is there a private remedy for alleged state action denying an applicant expedited food stamp service in violation of the Federal Food Stamp Act? The Food Stamp Act requires every partici-

---

5. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).

6. 28 U.S.C. § 1331.

7. *See Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), holding that § 1343 affords federal courts jurisdiction to redress only deprivations of rights secured by the Constitution or by Acts of Congress providing "equal rights" under

1343(3) or "civil rights" under 1343(4). The Court found that the Social Security Act, 42 U.S.C. §§ 301 et seq., did not provide for "equal" or "civil" rights and thus that the federal court had no jurisdiction under § 1343 to entertain an action complaining of violations of the Act.

8. 448 U.S. 1, 8 n. 6, 100 S.Ct. 2502, 2506 n. 6, 65 L.Ed.2d 555, 562 n. 6 (1980).

pating state to adopt a program for the granting of a fair hearing and prompt determination of any claim by a household aggrieved by the action of the state agency.[9] The federal act also provides for action by the Secretary against a state agency that violates the provisions of the Act, including seeking injunctions and withholding funds. 7 U.S.C. § 2020(g). Pursuant to the Food Stamp Act and its implementing federal regulations, Louisiana has enacted a comprehensive system for hearings and review of actions by agency officials.[10]

The Food Stamp Act was enacted pursuant to the federal spending power. Like other federal-state cooperative programs, the Act is voluntary. The states are given the choice of complying with its conditions or foregoing the benefits of federal funding.[11] "In legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." [12] In interpreting the Act, we consider again "the recurring question whether Congress intended to create a private right of action under a federal statute without saying so explicitly. The key to the inquiry is the intent of the Legislature." [13] We examine first the statutory language, then the legislative history and other traditional aids to statutory interpretation to determine Congressional intent.

 Like the statute examined in *Middlesex*, the Food Stamp Act contains comprehensive enforcement provisions and exacts elaborate remedial measures from the participating state.[14] In view of these provisions, it cannot be assumed that Congress intended in addition to authorize a judicial remedy for every private person aggrieved by an alleged violation of the Act. As the Court stated in *Transamerica Mortgage Advisors, Inc. v. Lewis*,[15] "it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." [16] "In the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate." [17] In *Cort v. Ash*,[18] the Court identified several factors relevant to the question of implied private remedies, including the legislative history. We find nothing in the legislative history that leads to the conclusion that Congress intended to create a private remedy.

 As the Court noted in *Middlesex County*, however, there remains a final possible source of express Congressional authorization of private suits under the

9. The State plan of operation required under subsection (d) of this section shall provide, among such other provisions as may be required by regulation—
10. for the granting of a fair hearing and a prompt determination thereafter to any household aggrieved by the action of the State agency under any provision of its plan of operation as it affects the participation of such household in the food stamp program or by a claim against the household for an overissuance.
7 U.S.C. § 2020(e)(10).

10. L.S.A.–R.S. 46:107 (West 1982).

11. *See, e.g., Pennhurst State Sch. & Hospital v. Halderman*, 451 U.S. 1, 11, 101 S.Ct. 1531, 1537, 67 L.Ed.2d 694, 703 (1981); *see also King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), and other cases cited in *Pennhurst*, loc. cit.

12. *Pennhurst State Sch. & Hospital v. Halderman, supra*, 451 U.S. at 28, 101 S.Ct. at 1545, 67 L.Ed.2d at 714 (1981).

13. *Middlesex Cty. Sewerage Auth. v. Nat. Sea Clammers*, 453 U.S. 1, 13, 101 S.Ct. 2615, 2622, 69 L.Ed.2d 435, 446 (1981), and cases cited therein.

14. *See, e.g.,* 7 U.S.C. § 2020(e)(10); 7 U.S.C. § 2020(g); L.S.A.–R.S. 46:107 (West 1982).

15. 444 U.S. 11, 19, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979).

16. 444 U.S. at 19, 100 S.Ct. at 247.

17. *Middlesex Cty. Sewerage Auth. v. Nat. Sea Clammers*, 453 U.S. at 15, 101 S.Ct. at 2623, 69 L.Ed.2d at 447 (1981).

18. 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975).

Food Stamp Act. In *Maine v. Thiboutot*,[19] the Court construed 42 U.S.C. § 1983 as authorizing suits to redress violations by state officials of rights created by federal statutes. Accordingly, the food stamp claimant urges that he can sue the state agency and state officials under the Food Stamp Act by virtue of a right of action created by § 1983. When, however, the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate Congressional intent to preclude the remedy of suits under § 1983.[20] The Food Stamp Act provides the comprehensive enforcement mechanisms already mentioned. We cannot find an intention by Congress to preserve a right of action under § 1983 when it required the state to create specific remedies in addition to those provided by the Act. The existence of these express statutory remedies demonstrates that Congress intended not only to foreclose implied private actions but to supplant any remedy that otherwise would be available under § 1983.

Because the statute creates no private cause of action and none lies independently under § 1983, we affirm the dismissal. This does not imply approval of the summary procedure adopted by the magistrate *sua sponte*. Unlike lack of subject matter jurisdiction, which a court must notice whether or not the litigants raise the issue, the issue of failure to state a claim must be raised by the defendant, who may do so by invoking Fed.R.Civ.P. 12(b). A defendant may waive this defense. Or, the defense being raised, the plaintiff may be able to amend to state a claim. In the present case, the position of the parties on appeal makes clear that a remand for service of process and further pleading would serve no purpose; the state has indicated that it would file a motion to dismiss and, despite the able efforts of court-appointed counsel, the plaintiff has not suggested any amendment that would suffice to raise a claim.

For these reasons, the judgment is AFFIRMED.

---

19. 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).

20. *Middlesex Cty. Sewerage Auth. v. Nat. Sea Clammers, supra,* 453 U.S. at 20, 101 S.Ct. at 2626, 69 L.Ed.2d at 450.