**Josephine VICTORIAN and Ruth Helen Jones, Plaintiffs-Appellants,**

v.

**Barbara MILLER, Supervisor, et al., Defendants-Appellees.**

No. 85–2494.

United States Court of Appeals, Fifth Circuit.

April 7, 1987.

---

Jeffrey J. Skarda, Gulf Coast Legal Foundation, Houston, Tex., for plaintiffs-appellants.

Robert Ozer, Asst. Atty. Gen., Austin, Tex., for defendants-appellees.

Before CLARK, Chief Judge, GEE, RUBIN, REAVLEY, POLITZ, RANDALL, JOHNSON, WILLIAMS, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, HILL, and JONES, Circuit Judges.

JOHNSON, Circuit Judge:

We consider this case en banc to review the panel's holding that no private right of action is available under 42 U.S.C. § 1983 to remedy state violations of the Food Stamp Act, 7 U.S.C. §§ 2011–2029. *See Victorian v. Miller*, 796 F.2d 94 (5th Cir. 1986). In reaching its conclusion, the panel acted under the constraint of our decision in *Tyler v. Mmes. Pasqua & Toloso*, 748 F.2d 283 (5th Cir.1984), a decision it could not overrule. Having now reconsidered the issue en banc, we expressly overrule *Tyler* and hold that food stamp claimants may bring an action under section 1983 against state officials for violations of the Food Stamp Act.

I.

The Food Stamp Act provides a state-administered program for distributing federally funded food stamps. Like other federal-state cooperative programs, the Act is voluntary. The states are given the choice of complying with the Act's conditions or forgoing the benefits of federal funding. As one of its conditions, the Act requires participating states to furnish expedited service no later than five days after the date of application to desperately poor households meeting specified eligibility requirements. 7 U.S.C. § 2020(e)(9).[1]

---

1. Section 2020(e)(9) of the Food Stamp Act provides, in pertinent part, that the state agency shall

The plaintiffs in this case, Josephine Victorian and Ruth Helen Jones, applied to the Texas Department of Human Services (TDHS) for expedited food stamps. Although the Act requires expedited service to qualified applicants within five days, TDHS delayed thirty days before processing the application of either Victorian or Jones. According to plaintiffs, this delay reflects a pattern of noncompliance by certain TDHS officials. Plaintiffs filed this action pursuant to 42 U.S.C. § 1983 alleging a violation of the Food Stamp Act, and also claiming that the State's failure to provide expedited benefits denied their constitutional rights to equal protection and due process under the fourteenth amendment. In addition to damages for sums wrongfully withheld, plaintiffs sought declaratory and injunctive relief to compel TDHS officials to comply with the Act.

Following limited discovery, and in response to the State's motion, the district court dismissed the case. The district court ruled that all plaintiffs' theories were foreclosed by this Court's decision in *Tyler v. Mmes. Pasqua & Toloso*, 748 F.2d 283 (5th Cir.1984), which held that the Food Stamp Act does not create a private right of action and that none lies independently under section 1983. On appeal to this Court, the panel affirmed the district court's decision dismissing plaintiffs' statutory claims.[2] *Victorian v. Miller*, 796 F.2d 94, 95 (5th Cir.1986). In doing so, the panel correctly noted that *Tyler* represented the firm rule of this Circuit which could be overturned only by the en banc Court. We now reconsider *Tyler's* section 1983 holding.

> (A) provide coupons no later than five days after the date of application to any household which—
>
> (i)(I) has gross income that is less than $150 per month; or
>
> (II) is a destitute migrant or a seasonal farmworker household in accordance with the regulations governing such households in effect July 1, 1982; and
>
> (ii) has liquid resources that do not exceed $100....

## II.

■ Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. In *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980), the Supreme Court held that the reference to "laws" in section 1983 is not limited to civil rights or equal protection laws but rather embraces all federal statutes.[3] Section 1983 is, however, unavailable to enforce federal statutes in two settings: (1) where Congress has foreclosed section 1983 enforcement in the enactment itself and (2) where the statute does not create enforceable rights, privileges, or immunities within the meaning of section 1983. *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981); *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981).

The second of these limitations has no application in the instant case. To determine whether a statute creates enforceable rights, privileges, or immunities within the meaning of section 1983, we first examine the statutory language to see whether it is "phrased in terms of the persons benefited," *Cannon v. University of Chicago*, 441 U.S. 677, 692 n. 13, 99 S.Ct. 1946, 1955 n.

2. The panel also held, however, that the district court had incorrectly applied *Tyler* to dispose of plaintiffs' constitutional claims as well. The case was remanded to the district court for resolution of those claims. 796 F.2d at 96.

3. Section 1983 thus allows private parties to enforce federal laws against a special class of defendants—state and municipal actors—in much the same way that implied rights of action permit private enforcement of federal statutory obligations against any party, public or private.

13, 60 L.Ed.2d 560 (1979), as well as whether it is cast in mandatory rather than precatory terms, *see Pennhurst,* 451 U.S. at 18, 101 S.Ct. at 1540. We next review "the legislative history of the statute and other traditional aids to determine congressional intent to create enforceable rights." *Wright v. City of Roanoke,* — U.S. —, —, 107 S.Ct. 766, 776, 93 L.Ed.2d 781 (1987) (O'Connor, J., dissenting).

The Food Stamp Act is phrased in terms of "eligible households," *e.g.,* 7 U.S.C. §§ 2011, 2014, and individuals, *e.g.,* 7 U.S.C. § 2015. Rather than containing a mere precatory statement of congressional preference, the Food Stamp Act mandates that participating state agencies *shall* provide expedited food stamps to each household meeting specified eligibility criteria. 7 U.S.C. § 2020(e)(9). The legislative history indicates that households that meet uniform eligibility requirements are entitled to food stamps. H.R.Rep. No. 464, 95th Cong., 1st Sess. 398, *reprinted in,* 1977 U.S.CODE CONG. & AD.NEWS 1978, 2342. Finally, the Supreme Court has stated that food-stamp benefits "are a matter of statutory entitlement" as well as "a form of 'property' protected by the Due Process Clause." *Atkins v. Parker,* 472 U.S. 115, 128, 105 S.Ct. 2520, 2529, 86 L.Ed.2d 81 (1985). We conclude that the Act creates enforceable rights within the meaning of section 1983.[4]

■ This case turns then on the first listed limitation, that is, whether Congress has foreclosed section 1983 enforcement of the Food Stamp Act in the Act itself. Determining the existence of an express private right of action under section 1983 is similar to determining the existence of an implied private right of action in that both inquiries focus on congressional intent. Statutory section 1983 claims, however, differ significantly from implied private rights of action. To establish an implied private right of action under a federal statute, a plaintiff bears the relatively heavy burden of demonstrating that Congress affirmatively contemplated private enforcement when it passed the relevant statute. *See, e.g., Merrill, Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 377–78, 102 S.Ct. 1825, 1838–39, 72 L.Ed.2d 182 (1982); *Cannon v. University of Chicago,* 441 U.S. 677, 688, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979).

■ Plaintiffs do not bear the same burden in seeking to establish a section 1983 right of action. The issue is not the intent of Congress to permit a section 1983 action, but rather the intent of Congress to withdraw the existing section 1983 remedy. The burden of establishing such intent rests on the defendant. *See, e.g., Wright v. City of Roanoke,* — U.S. —, 107 S.Ct. 766, 771, 93 L.Ed.2d 781 (1987); *Smith v. Robinson,* 468 U.S. 992, 1012, 104 S.Ct. 3457, 3469, 82 L.Ed.2d 746 (1984). This analysis of statutory section 1983 claims is consistent with the general presumption against congressional repeals of prior statutes by implication. *See, e.g., Tennessee Valley Auth. v. Hill,* 437 U.S. 153, 189–93, 98 S.Ct. 2279, 2299–2301, 57 L.Ed.2d 117 (1978).[5]

Congressional intent to preclude reliance on section 1983 as a remedy for the deprivation of a federally secured right is not to be lightly inferred. *Smith v. Robinson,* 468 U.S. 992, 1012, 104 S.Ct. 3457, 3469, 82 L.Ed.2d 746 (1984). Congress is presumed to legislate against the background of section 1983 and thus to contemplate private enforcement of the relevant statute against state actors absent discernible congressional intent to the contrary. As the Supreme

---

**4.** Thus this case does not raise the problems that prompted four justices to dissent in *Wright v. City of Roanoke,* 107 S.Ct. at 776.

**5.** The different presumptions for § 1983 claims and implied private rights of action also accords with separation of powers principles. Because Congress itself expressly created the § 1983 cause, it cannot be argued, as it occasionally is in implied private right of action cases, that

judicial enforcement is illegitimate judicial lawmaking. *See Cannon v. University of Chicago,* 441 U.S. at 731–32, 99 S.Ct. at 1975 (Powell, J., dissenting); *see also* Sunstein, *Section 1983 and the Private Enforcement of Federal Law,* 49 U.Chi.L.Rev. 394, 415 (1982); Wartelle & Louden, *Private Enforcement of Federal Statutes: The Role of the Section 1983 Remedy,* 9 Hast. Const. L.Q. 487, 536–37 (1982).

Court recently emphasized, the state actor must demonstrate "by express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement." *Wright v. City of Roanoke,* —— U.S. ——, 107 S.Ct. 766, 771, 93 L.Ed.2d 781 (1987).

 Comprehensive remedial devices provided in a particular statute may suffice to demonstrate congressional intent to preclude a section 1983 right of action. In *Sea Clammers,* for example, the Supreme Court found an intent to foreclose resort to section 1983 in the comprehensive remedial scheme expressly provided by Congress, a scheme that itself provided for private judicial remedies.[6] 453 U.S. at 21–22, 101 S.Ct. at 2626–27. Similarly, in *Smith v. Robinson,* the Supreme Court held that allowing a plaintiff to circumvent the Education of the Handicapped Act's administrative remedies would be inconsistent with Congress' carefully tailored scheme, a scheme which like that involved in *Sea Clammers* allowed private parties to seek judicial relief.[7] 468 U.S. at 1012, 104 S.Ct. at 3469.

A statute's express remedial scheme must, however, be sufficiently comprehensive and effective to raise a clear inference of congressional intent. In *Wright v. City of Roanoke,* the Court considered whether the remedial devices provided in the United States Housing Act of 1937, 42 U.S.C. § 1437a, demonstrated that Congress intended to foreclose a section 1983 remedy. The Housing Act creates federal subsidies to permit local public housing agencies (PHAs) to charge below market rent to eligible tenants. The Act provides that HUD "shall by regulation require each public housing agency receiving assistance [under the Act] to establish and implement an administrative grievance procedure" to resolve tenant-management disputes. *Id.* § 1437d(k). The Act also empowers HUD to audit local PHAs, to enforce annual contributions contracts, and to cut off federal funds. With regard to the Act's requirement of formal grievance procedures, the Court observed that even if those procedures could provide relief to the plaintiffs in that case, "the existence of a state administrative remedy, does not ordinarily foreclose resort to § 1983." 107 S.Ct. at 773. With regard to HUD's authority to audit, enforce, and cut off funds, the Court concluded that "these generalized powers are insufficient to indicate a congressional intention to foreclose § 1983 remedies." *Id.* The Court concluded that the respondent had not demonstrated that the Housing Act's remedial devices were *"sufficiently comprehensive and effective to raise a clear inference that Congress intended to foreclose a § 1983 cause of action...."* 107 S.Ct. at 771 (emphasis added).[8]

---

**6.** The statutes involved in *Sea Clammers* were the Federal Water Pollution Control Act (FWPCA), 33 U.S.C. §§ 1251–1376, and the Marine Protection, Research, and Sanctuaries Act of 1972 (MPRSA), 33 U.S.C. §§ 1401–1445. Both Acts contain citizen-suit provisions authorizing limited private judicial remedies. Section 1369(b) of the FWPCA provides that "any interested person" may seek judicial review in the United States Courts of Appeals of various particular actions by the EPA, including establishment of effluent standards and issuance of permits for discharge of pollutants. This review must be sought within 90 days. Section 1415(g) of the MPRSA provides that "any person may commence a civil suit on his own behalf to enjoin any person ... who is alleged to be in violation of ... this subchapter." These statutory devices provided the plaintiffs in *Sea Clammers* with a remedy for the alleged violations in that case. The plaintiffs had failed, however, to comply with the procedures required to invoke the express statutory remedies and thus argued that they also had an implied private right of action independent of the express direct statutory rights of action. Plaintiffs also sought relief not available under the applicable citizen-suit provisions.

**7.** The Education of the Handicapped Act, 20 U.S.C. §§ 1401–1461, provides an elaborate administrative review scheme and a right to judicial review of decisions resulting from administrative proceedings. In particular, § 1415(e)(2) provides that any "party aggrieved by [administrative] findings ... shall have the right to bring a civil action ... which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy...."

**8.** The Court also found that there had been both congressional and agency actions indicating that private actions were anticipated to enforce rights conferred by the Brooke Amendment to the Housing Act. 107 S.Ct. at 771.

■ Applying the foregoing standard to the instant case, we cannot say that the Food Stamp Act's remedial mechanisms "raise a clear inference" that Congress intended to foreclose a section 1983 remedy. The Act requires that every participating state adopt a program for granting a fair hearing and prompt determination of any claim by a household aggrieved by the action of the state agency. 7 U.S.C. § 2020(e)(10).[9] The Act also provides that the Department of Agriculture may withhold funds and seek injunctive relief against a state which is in violation of the Act. 7 U.S.C. § 2020(g).[10] Unlike the statutes at issue in *Sea Clammers* and *Smith v. Robinson,* which themselves provided for private judicial remedies, the Food Stamp Act contains no provision enabling food stamp claimants to pursue judicial remedies. Rather, the Food Stamp Act's remedial scheme is similar to the Housing Act scheme which the Court in *Wright* found insufficient to foreclose a private section 1983 right of action. Like the Housing Act scheme, the only remedy provided food stamp claimants is a state administrative grievance procedure. As the Court noted in *Wright,* "the existence of a state administrative remedy does not ordinarily foreclose resort to § 1983." 107 S.Ct. at 773 (*citing Patsy v. Board of Regents of Florida,* 457 U.S. 496, 516, 102 S.Ct. 2557, 2567, 73 L.Ed.2d 172 (1982)).

The Department's authority to withhold funding and to seek injunctive relief to enforce state compliance with the Act's requirements is also insufficient to "raise a clear inference" that Congress intended to foreclose a section 1983 right of action. Rather, there are clear indications that Congress anticipated such private actions to supplement the Department's enforcement authority. The Act as originally enacted authorized the Department to withhold funds from states in substantial noncompliance with the Act.[11] Terminating federal funding is, however, a drastic remedy, which is rarely imposed, and as a general rule only serves to injure a program's intended beneficiaries. Seeking to increase the flexibility of the Department's enforcement mechanisms, Congress amended the Act in 1977 to authorize the Department to seek injunctive relief against noncomplying states.

Congress also amended the Act to provide guidelines for judicial enforcement of the Act through private actions. Section 2023(b) provides:

> In any judicial action arising under this chapter, any food stamp allotments found to have been wrongfully withheld shall be restored only for periods of not more than one year prior to the date of the commencement of such action, or in the case of an action seeking review of a final State agency determination, not more than one year prior to the date of

9. Section 2020(e)(10) provides:
The State plan of operation ... shall provide, among such other provisions as may be required by regulation—, for the granting of a fair hearing and a prompt determination thereafter to any household aggrieved by the action of the State agency under any provision of its plan of operation as it affects the participation of such household in the food stamp program or by a claim against the household for an overissuance....

10. Section 2020(g) provides:
If the Secretary determines ... that in the administration of the food stamp program there is a failure by a State agency without good cause to comply with any of the provisions of this chapter ... the Secretary shall immediately inform such State agency of such failure and shall allow the State agency a specified period of time for the correction of

such failure. If the State agency does not correct such failure within that specified period, the Secretary may refer the matter to the Attorney General with a request that injunctive relief be sought to require compliance forthwith by the State agency and ... appropriate injunctive relief shall issue, and, whether or not the Secretary refers such matter to the Attorney General, the Secretary shall proceed to withhold from the State such funds authorized under sections 2025(a), 2025(c), and 2025(g) of this title as the Secretary determines to be appropriate....

11. Several courts have found that such a remedy does not indicate congressional intent to foreclose resort to private rights of action. *See, e.g., Wright v. City of Roanoke,* —— U.S. at ——, 107 S.Ct. at 773; *Cannon v. University of Chicago,* 441 U.S. at 704–05 n. 42, 99 S.Ct. at 1963 n. 42; *Samuels v. District of Columbia,* 770 F.2d 184, 196 (D.C.Cir.1985).

the filing of a request with the State for the restoration of such allotments, or in either case, not more than one year prior to the date the State agency is notified or otherwise discovers the possible loss to a household.

This subsection plainly contemplates actions for restoration of withheld allotments in addition to judicial review of agency denial of allotments. We also infer that the actions are private, for the Department is empowered only to seek injunctions and to withhold funds from the states for substantial noncompliance, but not to seek restoration of allotments in individual cases. Thus, the statute does not clearly express an intent to foreclose a section 1983 action.

As further evidence that Congress did not intend to foreclose a section 1983 action, the legislative history to the 1977 amendments explicitly states that Congress did not intend to withdraw existing private rights of action. Among the existing private rights of action was that expressly created by Congress in 42 U.S.C. § 1983.[12] In reporting on the changes in the Act's administrative enforcement scheme, the House Agriculture Committee Report stated:

> The administrative remedies against the state contained in section 11(f) and elsewhere should not be construed as abrogating in any way private causes of action against states for failure to comply with federal statutory or regulatory requirements.

H.R.Rep. No. 464, 95th Cong., 1st Sess. 398, *reprinted in,* 1977 U.S.CODE CONG. & AD.NEWS 1978, 2327. The report specifically referred to a number of cases prior to 1977 involving private actions to enforce state compliance with the Act. *Id.* at 414, *reprinted in,* 1977 U.S.CONG. CODE & AD.NEWS at 2342. The report's explicit statement that administrative remedies do not abrogate a private party's right to sue and the specific acknowledgement of cases based on that right conclusively demonstrates that Congress did not intend to foreclose a section 1983 remedy.

Given our conclusion that the Food Stamp Act creates enforceable rights to expedited benefits in favor of eligible claimants and our further conclusion that the Act does not foreclose a section 1983 remedy, we hold that plaintiffs have a section 1983 right of action to enforce state compliance with the Act. Our decision in *Tyler v. Mmes. Pasqua & Toloso,* 748 F.2d 283 (5th Cir.1984), is hereby overruled.[13] The panel opinion which has been vacated by the order granting rehearing en banc is reinstated to the extent it is not inconsistent with our decision today. The judgment of the district court is REVERSED and the case REMANDED for further proceedings.

REVERSED AND REMANDED.

---

**12.** Several courts had, at that time, also concluded that an implied private right of action was available to remedy violations of the Food Stamp Act. *Carter v. Butz,* 479 F.2d 1084, 1088 (3d Cir.), *cert. denied,* 414 U.S. 1094, 94 S.Ct. 727, 38 L.Ed.2d 552 (1973) (implying a private right of action against state officials to redress violations of the Food Stamp Act); *Stewart v. Butz,* 356 F.Supp. 1345 (W.D.Ky.1973), *aff'd,* 491 F.2d 165 (6th Cir.1974) (remedy must be available to plaintiff to enforce statutory right to food stamps); *Bermudez v. Department of Agriculture,* 348 F.Supp. 1279 (D.D.C.1972), *aff'd,* 490 F.2d 718 (D.C.Cir.), *cert. denied,* 414 U.S. 1104, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973).

**13.** As indicated earlier, *Tyler* also held that no implied private right of action is available to remedy violations of the Food Stamp Act. 748 F.2d at 286. In reaching this conclusion, the panel found "nothing in the legislative history that leads to the conclusion that Congress intended to create a private remedy." *Id.* The panel's conclusion is undermined by the legislative history discussed herein which indicates that in enacting the Food Stamp Act of 1977, Congress was aware of decisions implying private rights of action under the 1964 Act and intended to preserve these existing rights of action. *See* H.R.Rep. No. 464, 95th Cong., 1st Sess. 398, *reprinted in,* 1977 U.S.CODE CONG. & AD.NEWS 1978, 2327 and 2342. The Seventh Circuit has recently relied on this legislative history to hold that implied private rights of action are available under the Food Stamp Act. *See Haskins v. Stanton,* 794 F.2d 1273 (7th Cir. 1986). Our conclusion in the instant case that plaintiffs have a right of action under § 1983 obviates the need to consider whether the alternative remedy of an implied private right of action is available under the Food Stamp Act. *See Sea Clammers,* 453 U.S. at 20, 101 S.Ct. at 2626. We deem it prudent to leave that question until squarely presented.