April 2, 1993 UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1933

THOMAS P. BUDNICK,

Plaintiff, Appellant,

v.

BARNSTABLE COUNTY BAR ADVOCATES, INC.,

Defendant, Appellee.

ERRATA SHEET

The opinion of this Court issued on March 30, 1993 is amended as
follows:

Page 2, footnote 1, line 16: Change "renumeration" to
"remuneration."

March 30, 1993 [NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1933

THOMAS P. BUDNICK,

Plaintiff, Appellant,

v.

BARNSTABLE COUNTY BAR ADVOCATES, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Edward F. Harrington, U.S. District Judge]

Before

Breyer, Chief Judge,

Selya and Cyr, Circuit Judges.

Thomas P. Budnick on brief pro se.

Edward B. McGrath, Thomas B. Farrey, III, and Burns & Farrey on

brief for appellees Town of Harwich, Barry M. Mitchell, Estate of
Norman A. Fennell, Jonathan Mitchell, and Harwich Police Department.
Scott Harshbarger, Attorney General, and Stephen Dick, Assistant

Attorney General, on Memorandum of Law for appellees Massachusetts
Department of Public Safety and Sidney Callis, M.D.

Per Curiam. The district court disposed of the

complaint of plaintiff/appellant, Thomas Budnick, by the

following order:

This Court has thoroughly reviewed
the plaintiff's Complaint. It is rife
with bizarre factual and legal
allegations rendering it virtually
incomprehensible. This Court has
concluded that the plaintiff's Complaint
fails to state a claim upon which relief
can be granted. Therefore, this Court,
acting sua sponte, ORDERS that the above-

entitled action be DISMISSED WITH
PREJUDICE.
SO ORDERED.

Budnick appeals the dismissal of his complaint with prejudice

and the denial of his subsequent motions seeking to vacate

the dismissal, to vacate the "with prejudice" designation,

and to amend his complaint. While we disagree with the

district court's characterization of the complaint as

virtually incomprehensible,1 we agree that it fails to state

1. To be sure, Budnick's complaint contains references which
understandably may be characterized as bizarre. Budnick is a
self-proclaimed space prospector, who believes that the
United States ought to continue its "manifest destiny" by
claiming mineral rights on heavenly bodies, on its own
behalf, rather than allowing space exploration to be pursued
on behalf of "common mankind." Using various resources, he
has mapped out mining claims to plots on several planets,
asteroids, and the moon, which he believes are rich in
diamonds, gold, platinum, and other strategic metals. He
sought to file his mining claims in numerous county courts of
numerous states, but was rebuffed. Since 1981, however, the
Sabine County Court, in rural East Texas, has accepted for
filing more than 60 of his mining claims because, according
to the court clerk's office, the county needed the money from
the filing fees. Budnick says that he does not expect to
gain any financial remuneration; he has filed his claims in
the names of the heirs of, among others, Sam Houston, Moses,

-2-

a claim upon which relief can be granted. Further, we

conclude that any amendment would be futile. With respect to

the pendent state law claims, however, we believe that they

should have been dismissed without prejudice for lack of

and Martin Luther.
Fragmentary references to this hobby (and to field assay
work which he has done here on Earth) were scattered
throughout his complaint. A somewhat clearer frame of
reference emerged when Budnick filed his opposition to
Attorney Loesch's motion to dismiss, see footnote 4, infra,

and he submitted copies of several newspaper accounts which
outlined this story.
Although these factual allegations are odd, they suggest
that Budnick may be eccentric, but do not support an
inference that he is delusional. And, while these factual
allegations arguably may seem bizarre, they were not the
basis for any bizarre legal allegations. The complaint, as
described infra at 7-8, alleged that Budnick was unlawfully

arrested for attempting to cut down a tree on his parents'
property and then held involuntarily for mental evaluation.
At first blush, it is puzzling why these references to his
hobby were included at all. A closer reading suggests,
however, that Budnick proceeded on the assumption that he
must present his entire case when filing his complaint,
including resulting harm. And, in his view, his reputation
has been damaged by his confinement for mental evaluation
following his arrest. Budnick concedes that he has been
scoffed at by many, but, he says, people dismissed this
country's purchases of the Louisiana Territory and Alaska.
His credibility can only be further weakened, he says, when
those who disagree with his support for a continuing
"manifest destiny" discover his involuntary commitment for
psychiatric evaluation. Damage to reputation alone, of
course, does not constitute a viable claim under 1983.
Paul v. Davis, 424 U.S. 693, 713 (1976); Watterson v. Page,

No. 92-1224, 1993 WL 23908, at *6 n.4 (1st Cir. Feb. 9,
1993). But Budnick did not allege damage to his reputation
as the basis for his cause of action. He asked that the
court consider that harm in assessing damages resulting from
what he alleged was an unlawful arrest and involuntary
commitment for mental evaluation.
Construing this inartful pro se complaint in a liberal
fashion, as we must, Haines v. Kerner, 404 U.S. 519, 520

(1972), we disagree that it is "virtually incomprehensible."

-3-

jurisdiction. We vacate and remand to the district court for

entry of a judgment reflecting that conclusion. In all other

respects, we affirm the district court's order.

I. The Legal Standards

The district court did not spell out the statutory or

other available basis for its sua sponte dismissal. The

order's language - "the plaintiff's Complaint fails to state

a claim upon which relief can be granted" - suggests the

dismissal was pursuant to Fed. R. Civ. P. 12(b)(6). We

proceed, therefore, on that basis.2

The standard for a Rule 12(b)(6) dismissal is a familiar

and oft-repeated one. "[A] complaint should not be dismissed

for failure to state a claim unless it appears beyond doubt

that the plaintiff can prove no set of facts in support of

his claim which would entitle him to relief." Conley v.

Gibson, 355 U.S. 41, 45-46 (1957). We review such a

dismissal de novo. Kale v. Combined Ins. Co. of Am., 924

F.2d 1161, 1165 (1st Cir.), cert. denied, 112 S. Ct. 69

(1991); Gonzalez-Bernal v. United States, 907 F.2d 246, 248

(1st Cir. 1990).

The Supreme Court, as yet, has had "no occasion to pass

judgment, however, on the permissible scope, if any, of sua

2. In any event, we rule out as a possible basis 28 U.S.C.
1915(d), as that statute applies only to in forma pauperis
actions, Street v. Fair, 918 F.2d 269, 272 (1st Cir. 1990),

which this was not. Budnick paid the required filing fee.

-4-

sponte dismissals under Rule 12(b)(6)." Neitzke v. Williams,

490 U.S. 319, 329 n.8 (1989). The Court has pointed out that

"[u]nder Rule 12(b)(6), a plaintiff with an arguable claim is

ordinarily accorded notice of a pending motion to dismiss for

failure to state a claim and an opportunity to amend the

complaint before the motion is ruled upon." Id. at 329. A

sua sponte dismissal preempts that notice and opportunity to

amend before dismissal.

We have suggested, in dictum, that a sua sponte

dismissal on the ground that a complaint is inadequate,

without notice of the proposed dismissal and an opportunity

to address the issue, might require reversal. Literature,

Inc. v. Quinn, 482 F.2d 372, 374 (1st Cir. 1973).3 Even if

the district court erred in failing to provide Budnick with

pre-dismissal notice and opportunity to respond in this case,

however, we decline to remand because it is evident that (1)

Budnick could not prevail based on the facts alleged in the

complaint, see Smith v. Boyd, 945 F.2d 1041, 1043 (8th Cir.

3. Some courts have reversed in such circumstances. See,

e.g., Morrison v. Tomano, 755 F.2d 515 (6th Cir. 1985)

(holding that a district court should not dismiss a complaint
for failure to state a claim without affording plaintiffs
notice and an opportunity to address the perceived
shortcomings); Jefferson Fourteenth Assoc. v. Wometco de

Puerto Rico, 695 F.2d 524 (11th Cir. 1983) (holding that a

sua sponte dismissal without notice and an opportunity to
respond violated a plaintiff's due process rights); see also

Lewis v. N.Y., 547 F.2d 4, 6 n.4 (2d Cir. 1976) ("Failure to

afford plaintiffs an opportunity to address the court's sua

sponte motion to dismiss is, by itself, grounds for

reversal.").

-5-

1991) (holding that the failure to give notice and an

opportunity to respond prior to dismissal is not per se

reversible error when it is "patently obvious" the plaintiff

could not prevail based on the facts alleged in the

complaint); Baker v. Director, U.S. Parole Comm'n, 916 F.2d

725, 726 (D.C. Cir. 1990) (same), and (2) amendment would be

futile, see Shockley v. Jones, 823 F.2d 1068, 1072-73 (7th

Cir. 1987) (holding that a sua sponte dismissal without

notice or the opportunity to be heard is improper but

reversal is not mandated when amendment would be futile);

Tyler v. Mmes. Pasqua & Toloso, 748 F.2d 283, 287 (5th Cir.

1984) (similar), overruled on other grounds by, Victorian v.

Miller, 813 F.2d 718 (5th Cir. 1987).4

4. Although the order of dismissal stated that the district
court was acting sua sponte, one of the defendants, Attorney
Steven Loesch, had filed a motion to dismiss, pursuant to
Rule 12(b)(6), for failure to state a claim, and Budnick had
filed an opposition. The grounds raised in Attorney Loesch's
motion, however, would not have provided Budnick with notice
of any potential defects in his complaint as to any of the
other eight defendants, excepting perhaps the defendant
Barnstable County Bar Advocates, Inc., which Budnick alleged
was Loesch's employer. We treat the district court's
dismissal, therefore, as it, itself, characterized it - that
is, as a sua sponte dismissal. Our conclusion -- that the
failure to provide Budnick with pre-dismissal notice and
opportunity to respond does not warrant reversal because it
is evident that his complaint failed to state a claim and
that no amendment could remedy it -- necessarily encompasses
a conclusion that there was no error in dismissing Budnick's
claim against Loesch, the deficiency of which Budnick, in
fact, had notice and to which he had the opportunity to
respond.
We are also aware that the sua sponte dismissal in this
case deprived Budnick of his right, under Fed. R. Civ. P.
15(a), to amend his complaint "once as a matter of course at

-6-

II. The Complaint

Budnick's complaint is written in a narrative, and

somewhat dramatic, form. It contains much extraneous and

disjointed information. But construing this inartful

pleading by a pro se litigant in a liberal fashion, as we

must, Haines v. Kerner, 404 U.S. 519, 520 (1972), and

accepting as true the factual allegations pled, Rodi v.

Ventetuolo, 941 F.2d 22, 23 (1st Cir. 1991), we can distill

from the complaint that Budnick's claims stem from what he

alleges was an unlawful arrest. The complaint alleges the

following:

On September 23, 1990, Budnick resided at his parents'

home on Division Street in Harwich, Massachusetts. That

house apparently is in very close proximity to the boundary

between Harwich, and Dennis, Massachusetts. Budnick alleges

that, on that date, he began to cut down a pine tree on the

property, which had been damaged in a storm. After making

two cuts in the tree, his mother called the Harwich Police

Department. Officer Jonathan Mitchell responded.

Budnick left the scene, putting away his chain saw and

taking his car out for a ride, he says, to get the oil hot

any time before a responsive pleading is served." Fed. R.
Civ. P. 15(a); Correa-Martinez v. Arrillaga-Belendez, 903

F.2d 49, 59 n.8 (1st Cir. 1990) (a Rule 12(b)(6) motion to
dismiss is not a responsive pleading for purposes of Rule
15(a)). Inasmuch as we have determined that amendment would
be futile, error, if it be such, would not warrant remand.
Correa-Martinez v. Arrillaga-Belendez, 903 F.2d at 59.

-7-

for an oil change. He returned in an hour and started to

change the oil. He was, at that time, he alleges, 35 feet

into Dennis. A Dennis police officer arrived, following

which Harwich Police Officer Barry Mitchell arrived. Officer

Barry Mitchell spent a very short time in Budnick's house,

looking at what Budnick says was a leaking washing machine

pipe. Budnick had purchased a new washing machine the day

before and was going to replace the old machine. Officer

Barry Mitchell then came out and arrested Budnick for

malicious destruction of property over $250 [apparently the

tree and perhaps the pipe], Mass. Gen. L. ch. 266, 127, and

disorderly conduct, Mass. Gen. L. ch. 272, 53. Budnick, at

the time, was standing in Dennis. Budnick's mother protested

that she had only wanted the officer to talk to her son.

Budnick spent the night at the Harwich police station.

The next day, he was taken to court, where he was examined by

Dr. Sidney Callis, a court-appointed psychiatrist. Budnick

claims that Dr. Callis deliberately misinterpreted Budnick's

statements to him. The court committed Budnick to

Bridgewater State Hospital for psychological testing. On

October 1, 1990, Budnick was transferred to Cape Cod and the

Islands Community Mental Health Center.

On October 12, 1990, Budnick returned to court. He was

represented by court-appointed counsel, Attorney Steven

Loesch. Trial was set for November 6, 1990. In the

-8-

meantime, according to Budnick, Loesch made no effort to

conduct discovery.

On November 6th, the malicious destruction of property

charges were dismissed. The disorderly conduct charge was

continued without a finding for 30 days, whereupon that

charge also was dismissed.

Budnick filed a twenty-one page, eleven count complaint

seeking damages against nine defendants - (1) the Town of

Harwich, (2) the Harwich Police Department, (3) the estate of

Norman Fennell, the former Harwich Police Chief, (4) Officer

Jonathan Mitchell, (5) Officer Barry Mitchell, (6) the

Massachusetts Department of Public Safety, alleged to be the

employer of Dr. Callis, (7) Dr. Callis, (8) the Barnstable

County Bar Advocates, Inc., alleged to be the employer of

Attorney Loesch, and (9) Attorney Loesch. The complaint

alleged claims of false arrest, false imprisonment,

conspiracy, intentional infliction of emotional distress,

malicious prosecution, abuse of process, and negligence. It

alleged various bases for jurisdiction, including 42 U.S.C.

1983 and the Racketeer Influenced and Corrupt Organizations

(RICO) statute, 18 U.S.C. 1961 et seq., and pendent

jurisdiction over the state tort claims.

III. Discussion

Because all of Budnick's claims stem from what he

alleges was an unlawful warrantless arrest, we begin there.

-9-

To state a cause of action under 42 U.S.C. 1983, Budnick

must show that, in arresting him, Officer Barry Mitchell (1)

acted under color of state law; and (2) deprived Budnick of a

right secured by the Constitution or federal law. Parratt v.

Taylor, 451 U.S. 527, 535 (1981). There is no dispute that

Officer Mitchell was acting under color of state law in

arresting Budnick. Pittsley v. Warish, 927 F.2d 3, 6 (1st

Cir.), cert. denied, 112 S. Ct. 226 (1991). As to the second

element of a cause of action under 1983, the federal

Constitution permits an officer to arrest a suspect without a

warrant if there is probable cause to believe that the

suspect has committed or is committing an offense. Michigan

v. DeFillippo, 443 U.S. 31, 36 (1979).

Budnick says that his mother called the Harwich police

after he started to cut down a tree on his parents' property.

Officer Jonathan Mitchell responded and Budnick left the

scene. When he returned, Officer Barry Mitchell arrived,

entered Budnick's parents' home for a brief time, where he

apparently spoke to Budnick's mother, exited and arrested him

for malicious destruction of property and disorderly conduct.

These facts show that, at the moment of Budnick's arrest,

"the facts and circumstances within [Officer Barry

Mitchell's] knowledge and of which [he] had reasonably

trustworthy information [was] sufficient to warrant a prudent

man in believing that [Budnick] had committed or was

-10-

committing an offense." Beck v. Ohio, 379 U.S. 89, 91

(1964).5

Budnick's allegation of unlawful arrest merely recites a

lack of probable cause and, in fact, seems more focused on

another aspect of his arrest. Budnick repeatedly points out

that Officer Mitchell, a Harwich police officer, arrested

him, not in Harwich, but in Dennis. He says that Officer

Mitchell, a Harwich police officer, arrested him outside of

the officer's jurisdiction, in Dennis, on felony charges (2

counts of malicious destruction of property over $250) and a

misdemeanor charge (disorderly conduct) without a warrant and

not in "hot pursuit." But to proceed with a 1983 action,

Budnick must show that this extraterritorial arrest violates

a right secured by federal law, Constitutional or statutory.

"Whether an officer is authorized to make an arrest

ordinarily depends, in the first instance, on state law."

Michigan v. DeFillippo, 443 U.S. at 36. And in this case the

arrest does not even appear to be unlawful under state law.

5. The mere fact that Budnick's mother had not wished his
arrest and/or that the charges were later dismissed or
continued without a finding, of course, is irrelevant to the
validity of the arrest. See Michigan v. DeFillippo, 443 U.S.

at 36 (stating that "the mere fact that the suspect is later
acquitted of the offense for which he is arrested is
irrelevant to the validity of the arrest"); Baker v.

McCollan, 443 U.S. 137, 145 (1979) (stating that "[t]he

Constitution does not guarantee that only the guilty will be
arrested. If it did, 1983 would provide a cause of action
for every defendant acquitted - indeed, for every suspect
released.").

-11-

It is true that, under Massachusetts law, a police officer

has no power to make a warrantless arrest outside the

boundaries of the governmental unit by which he was appointed

except for a fresh pursuit arrest for any arrestable offense,

whether it be a felony or misdemeanor, initially committed in

the arresting officer's presence and within his jurisdiction.

Commonwealth v. LeBlanc, 407 Mass. 70, 72 (1990). But, "a

police officer, while unable to act as an officer in an

adjoining jurisdiction, does not cease to be a citizen in

that jurisdiction ... and may lawfully conduct a citizen's

arrest there if he has probable cause to believe that a

felony has been committed and that the person arrested has

committed it." Commonwealth v. Dise, 31 Mass. App. Ct. 701,

704 (1991), further appellate review denied, 412 Mass. 1102

(1992) (footnote omitted).6 And, if there was authority and

probable cause to arrest for the felony of malicious

destruction of property over $250, the arrest was lawful,

regardless of whether there was authority or probable cause

also to arrest for the misdemeanor. See Barry v. Fowler, 902

F.2d 770, 773 (9th Cir. 1990) (an arrest is a single

6. Cf. United States v. Foster, 566 F. Supp. 1403, 1411-12 &

n.9 (D.D.C. 1983) (finding a seizure violated the Fourth
Amendment where a Metro Transit police officer's Terry stop

of defendant for an offense occurring on a city street
exceeded the limits of the officer's authority to stop for
offenses originating on or in a Metro station and since the
offense was a misdemeanor, the officer's action could not be
justified as a citizen's arrest).

-12-

"seizure"; if there is probable cause to arrest for one

crime, the seizure is not unconstitutional even if probable

cause is lacking for the second crime.).7

In short, the allegations in Budnick's complaint suggest

a valid arrest under state law and nothing in that complaint,

or reasonably inferred from that complaint, suggests that

such an arrest, nonetheless, violates federal law so as to

support the exercise of federal jurisdiction. Further, even

a liberal reading of the complaint fails to reveal the seeds

of a viable claim which would indicate that any amendment

might be fruitful. Budnick described the circumstances of

his arrest in detail. The facts pled show probable cause and

lawful authority to arrest consistent with federal law. We

fail to see how any additional facts (and he has not provided

any, either in his motion to amend, filed in the district

court, or even in his appellate brief) could be compatible

with those already pled and also negate that showing.

7. We assume, without deciding, that a police officer,
although making a citizen's arrest, would nonetheless be
acting under color of state law in making the arrest. See

Street v. Surdyka, 492 F.2d 368, 374 (4th Cir. 1974). The

opposite assumption, of course, dooms the 1983 claim, in
any event.
Moreover, while state law might prohibit a warrantless
arrest for a misdemeanor not committed in the officer's
presence, such a prohibition is not grounded in the Fourth
Amendment. Barry v. Fowler, 902 F.2d at 772; Street v.

Surdyka, 492 F.2d at 370-73; 2 Wayne R. LaFave, Search and

Seizure 5.1(b), at 403-04 (2d ed. 1987).

-13-

The arrest being lawful, those claims which, as

described in Budnick's complaint, are necessarily premised

upon an unlawful arrest - that is, his claims against the

Town of Harwich, its police department and police chief, for

failure properly to investigate, for failure to train,

discipline, and/or supervise, and for negligent training,

discipline and/or supervision - fail as well. Pittsley v.

Warish, 927 F.2d at 9 n.4 ("In order to have a viable 1983

claim against a municipality, a state actor must first commit

an underlying constitutional violation.").

Budnick's claim that Dr. Callis, the court-appointed

psychiatrist, misinterpreted his statements and, as a result,

Budnick was committed to a state hospital for a week for

psychological testing and then to a community mental health

center for further testing fares no better.8 We pass the

question whether Dr. Callis is acting under color of state

law for purposes of 1983 in these circumstances. Compare

Watterson v. Page, No. 92-1224, 1993 WL 23908, at *5 (1st

Cir. Feb. 9, 1993) (assuming, without deciding, that a state

court order referring child for counseling to private

psychologists provided a sufficient basis for the

psychologists to be acting under color of state law) with

Hall v. Quillen, 631 F.2d 1154 (4th Cir. 1980) (holding that

8. We assume here that Budnick was suing Dr. Callis in his
individual capacity.

-14-

a court-appointed physician examining a plaintiff in

connection with a court-ordered involuntary commitment to a

state hospital is not acting under color of state law for

purposes of 1983 liability), cert. denied, 454 U.S. 1141

(1982). At best, the allegations state a claim of

negligence, which is an insufficient basis for a claim under

1983. Watterson v. Page, No. 92-1224, 1993 WL 23908, at

*6. Budnick's allegation that Dr. Callis' misinterpretation

was deliberate does not save this claim from dismissal. As a

witness at a judicial proceeding, Dr. Callis has absolute

immunity from 1983 damages liability even were his

testimony false. Id. at *7. If false testimony is cloaked

in immunity, certainly a deliberate misinterpretation is, as

well.9

The claim against Attorney Loesch based on Budnick's

dissatisfaction with his representation also was properly

dismissed. A court-appointed attorney when representing a

defendant in a state criminal proceeding does not act under

color of state law within the meaning of 1983. Polk County

9. The only allegation raised against defendant
Massachusetts Department of Public Safety is Budnick's
contention that that entity is the employer of Dr. Callis.
No viable 1983 claim having been raised against Callis, any
claim against the Massachusetts Department of Public Safety,
Callis' alleged employer, also fails. See Watterson v. Page,

No. 92-1224, 1993 WL 23908 at *7. In any event, suit against
the department (and against Callis, in his official capacity)
is barred by the Eleventh Amendment as a suit against the
state. Will v. Michigan Dep't of State Police, 491 U.S. 58,

66, 71 (1989).

-15-

v. Dodson, 454 U.S. 312 (1981); id. at 333 n.4 (Blackmun, J.,

dissenting); Jackson v. Salon, 614 F.2d 15, 16-17 (1st Cir.

1980).10

There being no deprivation of a federal right, Budnick's

conclusory claim of conspiracy among the various defendants

evaporates. Brennan v. Hendrigan, 888 F.2d 189, 195 (1st

Cir. 1989) (to be actionable under 1983, a plaintiff has to

show not only an agreement, but a deprivation of a

constitutionally secured right). Finally, there being no

allegations which would support the exercise of federal

jurisdiction,11 those pendent claims alleging violations of

the state Tort Claims Act, Mass. Gen. L. ch. 258, or which

otherwise arise under state tort law - false imprisonment,

intentional infliction of emotional distress, malicious

prosecution,12 abuse of process, negligence - were properly

10. Consequently, Budnick's claim against the Barnstable
County Bar Advocates, Inc., alleged to be Attorney Loesch's
employer, was properly dismissed as well. Pittsley v.

Warish, 927 F.2d at 9 n.4; see also Polk County v. Dodson,

454 U.S. at 325 ( 1983 will not support a claim based on a
respondeat superior theory of liability).

11. Budnick's allegation of a cause of action pursuant to
the RICO statute, 18 U.S.C. 1961 et seq., is patently
meritless and warrants no discussion. See Sedima, S.P.R.L.

v. Imrex Co., 473 U.S. 479, 496 (1985) (listing elements

required to state a claim).

12. To the extent that Budnick may have alleged malicious
prosecution as itself a constitutional violation actionable
under 1983, we note that malicious prosecution does not per
se abridge rights secured by the Constitution. Morales v.

Ramirez, 906 F.2d 784, 788 (1st Cir. 1990). In addition to

showing that defendants instituted criminal proceedings

-16-

dismissed. Mine Workers v. Gibbs, 383 U.S. 715, 726-27

(1966). Rather than dismiss with prejudice, however, we

think the preferable course is to dismiss these claims

without prejudice for lack of jurisdiction. Figueroa Ruiz v.

Alegria, 896 F.2d 645, 650 (1st Cir. 1990). We, therefore,

vacate the order of the district court with respect to the

state law claims and direct that these be dismissed without

prejudice for lack of jurisdiction. In so doing, of course,

we express no opinion as to their viability.

IV. Miscellaneous Motions

Contemporaneously with the denial of Budnick's motions

to vacate the dismissal of the complaint, to vacate the "with

prejudice" designation, and to amend the complaint, the

district court judge also denied a simultaneously filed

motion to disqualify himself. The motion to disqualify

alleged that Budnick intended to file a judicial misconduct

complaint against the judge. Budnick claims the district

court erred in ruling on his motions after being notified of

his intent to file a complaint. There was no error. The

mere issuance of unfavorable rulings cannot form the basis of

against an innocent person without probable cause for an
improper purpose, Torres v. Superintendent of Police of

Puerto Rico, 893 F.2d 404, 409 (1st Cir. 1990), "a federal

constitutional claim under 1983 based on malicious
prosecution requires conduct so egregious and conscience
shocking that it violates the plaintiff's due process
rights." Ayala-Martinez v. Anglero, 982 F.2d 26, 27 (1st

Cir. 1992). The conduct in the present case does not, by any
measure, rise to this level.

-17-

a disqualification or misconduct claim. Joseph E. Bennett

Co. v. Trio Indus., Inc., 306 F.2d 546, 549 (1st Cir. 1962).

Lastly, we dispose of several pending motions filed in

this court: (1) In view of the disposition of this appeal,

the motion of the Massachusetts Department of Public Safety

and Dr. Callis for summary disposition is denied as moot.

Their motion to accept their memorandum in support of that

motion as their appellees' brief is granted. (2) Budnick's

motions for default judgments against Attorney Loesch and the

Barnstable County Bar Advocates, Inc. are denied. (3)

Budnick's "motion to add clear color photographs for

previously submitted black and white photos" is denied. The

record on appeal is composed of the original papers and

exhibits filed in the district court. Fed. R. App. P. 10(a).

(4) Budnick's "motion to add recently revealed defendants-

appellees admission of Judge Harrington's error" is denied.

In any event, appellant misunderstands the statement to which

he points. It was not a concession.

V. Conclusion

For the reasons discussed in this opinion, the order of

the district court is affirmed, in part, and vacated and

remanded, in part.

-18-