Beverly FONVILLE,
Petitioner-Appellant,

v.

Raymond DONOVAN, as Secretary of the Dept. of Labor, James E. Scott Community Association and South Florida Employment and Training Consortium, Respondents-Appellees.

No. 83–5707

Non-Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Sept. 4, 1984.

Carolina A. Lombardi, Miami, Fla., for petitioner-appellant.

Marcia A. Lurensky, Div. of Employment & Training Legal Servs., U.S. Dept. of Labor, Washington, D.C., for respondents-appellees.

Before RONEY, TJOFLAT and ANDERSON, Circuit Judges.

PER CURIAM:

Beverly Fonville, the terminated employee of a Comprehensive Employment and Training Act (CETA) (29 U.S.C. § 801 *et seq.*) subrecipient, appeals the Secretary of Labor's determination that the standards for a Merit System of Personnel Administration (5 C.F.R., Part 900, Subpart F) governing employment termination do not apply to CETA subrecipients (20 C.F.R. § 676.43(a)). We affirm.

I.

Beverly Fonville worked as a counselor with the Youth Employment Service of the James E. Scott Community Association (JESCA), a subrecipient of funds under CETA. On September 22, 1980, JESCA notified her that her position was being discontinued because of reductions in program funding. In fact, her position actually remained available to be staffed by another employee whose previous job was cut.

Ms. Fonville filed a grievance on her termination, alleging that her position was not abolished due to budget limitations as she had been told. She also alleged that her termination was contrary to JESCA's

personnel policies and practices and CETA and its regulations as well.

## II.

We must initially determine which particular provisions of CETA and the regulations promulgated thereunder apply to staff members employed by CETA subgrantees. Ms. Fonville is only entitled to those rights, privileges, and protections granted to subgrantee staff by the Act and the regulations.

Ms. Fonville contends that Section 676.43 of the regulations governs her termination as a CETA staff employee.[1] Section 676.43 requires public agencies administering a program under CETA to establish methods of personnel administration in conformity with the "Standards for a Merit System of Personnel Administration, which incorporate the Intergovernmental Personnel Act Merit Principles prescribed by the Office of Personnel Management in 5 C.F.R., Part 900, Subpart F", 20 C.F.R. 676.43(a)(1). The pertinent principle of Subsection F provides for

> Retaining employees on the basis of the adequacy of their performance, correcting inadequate performance, and sepa-

rating employees whose inadequate performance cannot be corrected.

These standards cover layoffs of permanent employees.

The Secretary of Labor held, however, that the requirements of Section 676.43 are not applicable to CETA subgrantees such as JESCA. Section 676.43 was only intended to cover governmental and sponsoring agencies.

We agree with the Secretary of Labor. Section 676.43 specifically exempts JESCA, as a subrecipient, from having to establish a system of personnel administration in conformity with the standards for a Merit System of Personnel Administration. 20 C.F.R. 676.43(a)(3)(i); *In the Matter of Esperanza Martinez-Agosto*, 80–CETA–132 (Dec. 21, 1981).

An exempt agency such as JESCA, however, is required to

> ensure equal employment opportunity based on objective personnel policies and practices for recruitment, selection, promotion, classification, compensation, performance, evaluation, and employee-management relations.

1. 20 C.F.R. § 676.43, in pertinent part, provides as follows:

§ 676.43 Administrative staff and personnel standards.

(a) *Basic personnel standards.* (1) Methods of personnel administration will be established and maintained in public agencies administering a program under the Act in conformity with the Standards for a Merit System of Personnel Administration, which incorporate the Intergovernmental Personnel Act Merit Principles prescribed by the Office of Personnel Management in 5 CFR, Part 900, Subpart F.

(2)(i) Except as provided in paragraph (a)(3) of this section, any prime sponsor whose administrative staff is not covered under a personnel system that meets 5 CFR, Part 900, Subpart F shall develop a plan outlining corrective actions to be taken and reasonable dates for implementing those steps within the grant year. The Office of Personnel Management will advise the RA as to the acceptability of the plan.

(ii) Recipients whose personnel systems have been accepted by the U.S. Office of Personnel Management as being in conformity

with the Standards for a Merit System of Personnel Administration, 5 CFR Part 900, Subpart F, shall be deemed to be in compliance with this section.

(3) *The following are not subject to the requirements of paragraphs (a)(1) and (2) of this section:*

(i) *Any subrecipient or nongovernmental recipient;*

(ii) A consortium administrative unit which is not a unit of government;

(iii) Employees of the recipient not engaged in the administration or operation of programs under the Act.

(4) Units whose staff are exempt under paragraph (a)(3) of this section shall ensure equal employment opportunity based on objective personnel policies and practices for recruitment, selection, promotion, classification, compensation, performance evaluation, and employee-management relations. Such units may be asked to demonstrate adherence to the objectives of this paragraph by submittal of a personnel action plan similar to that outlined in 5 CFR, Part 900, Subpart F. These plans may be requested at the discretion of the RA. (Emphasis added)

20 C.F.R. 676.43(a)(4). Thus, appellant was entitled to certain rights under JESCA's independent personnel administration policy. *See In the Matter of Esperanza Martinez-Agosto,* 80–CETA–132 (Dec. 21, 1981) (same determination under 29 C.F.R. 98.-14(d), a similar provision in the former regulations). The requirements, however, for an exempt agency's personnel practices are not coextensive with the merit principles of 5 C.F.R., Part 900, Subpart F. To hold otherwise would render an exempt agency's status meaningless. One difference is that Section 676.43(a)(4) does not require objective standards for termination of subrecipient staff employees because termination is not listed as one of the areas in which objective policies are required. Therefore, JESCA's termination of appellant could not possibly have violated CETA or the regulations since neither provided substantive rights to subrecipient staff employees concerning termination.[2]

Appellant as a subrecipient staff employee was basically in the same position as a CETA participant-employee concerning termination. Neither CETA nor its regulations required a showing of good cause before a CETA participant-employee could be terminated. *In the Matter of James West,* 80–CETA–299 (July 6, 1981). We therefore affirm the Secretary's decision that CETA staff employees of a subrecipient may be terminated without good cause because the CETA and regulations do not state otherwise as they do for staff employees covered by the Intergovernmental Personnel Act Merit Principles set out in 5 C.F.R., Part 900, Subpart F.

Having determined that JESCA could violate its own personnel guidelines and terminate appellant without cause, we need not determine whether such cause existed. Appellant has no remedy under CETA. She may, of course, pursue non-CETA avenues in seeking recourse for her termination. *See* 20 C.F.R. 676.81(c).

AFFIRMED.

---

**2.** Such staff employees may have certain rights regarding termination if they prove their employer terminated them for a discriminatory purpose. *See* 20 C.F.R. 676.52. They are also guaranteed certain procedural protections upon termination.