821 F.2d 1526
 Patricia GONZALEZ, on behalf of herself and all others
similarly situated, Plaintiff-Appellant,
v.
David PINGREE, in his official capacity as Secretary of the
Florida Department of Health and Rehabilitative
Services, et al., Defendants-Appellees.
 No. 86-3545.
 United States Court of Appeals,
Eleventh Circuit.
 July 20, 1987.
 
 Michael Guare, Fla. Rural Legal Services, Bartow, Fla., Sally Schmidt, Fla. Rural Legal Services, Inc., Belle Glade, Fla., for plaintiff-appellant.
 John S. Miller, Asst. Gen. Counsel, Dept. of Health & Rehab. Services, Tallahassee, Fla., for defendants-appellees.
 Appeal from the United States District Court for the Middle District of Florida.
 Before FAY and CLARK, Circuit Judges, and HENDERSON, Senior Circuit Judges.
 HENDERSON, Senior Circuit Judge:
 
 
 1
 This is a case of first impression in this circuit. The sole issue for resolution is whether 42 U.S.C. Sec. 1983[1] provides a remedy for violations of the Food Stamp Act, 7 U.S.C. Sec. 2011 et seq. Finding insufficient evidence of congressional intent to foreclose Sec. 1983 action to redress deprivation of the substantive rights conferred by the Act, we reverse the decision of the United States District Court for the Middle District of Florida.
 
 
 2
 The plaintiff, Patricia Gonzalez, brought this suit on behalf of herself and all others similarly situated against David Pingree, Secretary of the Florida Department of Health and Rehabilitative Services (HRS) and Carl Neill, Administrator of certain Florida HRS offices. Mrs. Gonzalez, a seasonal farm worker, applied for expedited or emergency food stamps[2] at a HRS office in Plant City, Florida on Thursday, January 12, 1984. She was preliminarily determined qualified for expedited relief and given an interview appointment for the following Monday at which time she would receive her food stamps. The plaintiff failed to keep her scheduled appointment, and upon her return to the HRS office, she learned that this failure waived her right to expedited aid under state rules. The plaintiff's complaint alleged that the defendant's policy of denying emergency food stamps to destitute families on the basis of a missed appointment violated the Food Stamp Act and the Civil Rights Act of 1871, 42 U.S.C. Sec. 1983. The parties reached a settlement before trial in which the defendants agreed to abandon the challenged policy.
 
 
 3
 Upon consideration of the plaintiff's motion for attorney's fees pursuant to 42 U.S.C. Sec. 1988,[3] the district court found that Mrs. Gonzalez lacked standing to recover legal fees under that statute because she had failed to state a viable claim under Sec. 1983. In effect, the district court held that Sec. 1983 is not an available remedy for a violation of the Food Stamp Act.
 
 
 4
 In Maine v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Supreme Court concluded that violations of all federal statutes under color of state law may be actionable under Sec. 1983.[4] Id. at 4-8, 100 S.Ct. at 2504-06, 65 L.Ed.2d at 559-62. The broad sweep of Sec. 1983 is circumscribed only where the federal statute does not create enforceable "rights" within the meaning of Sec. 1983, or where Congress has foreclosed such enforcement in the legislation itself. See Pennhurst State School & Hospital v. Halderman, 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694, 714 (1981); Middlesex County Sewerage Authority v. National Sea Clammers Ass'n., 453 U.S. 1, 19, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435, 450 (1981).
 
 
 5
 In Pennhurst, the Supreme Court discussed the first exception to the availability of a Sec. 1983 action, finding that the federal statute at issue did not create enforceable rights. The federal-state grant program provided by the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. Sec. 6010, merely expressed a congressional preference for certain kinds of treatment for the developmentally disabled, to be funded largely at state expense. In contrast, the Food Stamp Act provides a detailed program designed to alleviate hunger and malnutrition among low income households. 7 U.S.C. Sec. 2011. The program is administered by the Department of Agriculture but each state which elects to participate in the program is responsible for developing and implementing a plan which conforms to the strict requirements of the Act.[5] Those states complying with the demands of the statute receive federal financing for 100% of the food stamp benefits provided and 50% of the state administrative costs. Although state participation in the food stamp program is voluntary, qualified applicants in those states taking part in the program have an enforceable right to expedited benefits. Title 7 U.S.C. Sec. 2020(e)(9) speaks in imperative, not merely permissive, terms mandating that state agencies "shall ... provide coupons no later than five days after the date of application" to destitute applicants. As the Supreme Court recognized, food stamps "are a matter of statutory entitlement" for needy individuals. Atkins v. Parker, 472 U.S. 115, 105 S.Ct. 2520, 2537, 86 L.Ed.2d 81, 102 (1985) (Brennan, J., dissenting).
 
 
 6
 In Sea Clammers, the Supreme Court elaborated on the second exception finding a legislative intent to supplant a Sec. 1983 remedy from the "unusually comprehensive remedial scheme" provided by Congress in the federal statutes at issue. This scheme included not only administrative remedies but expressly provided for private judicial actions as well. In a subsequent decision, Smith v. Robinson, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), the Court divined a similar congressional purpose behind the remedial structure of the Education of the Handicapped Act which, again, provided elaborate administrative remedies and a provision for private suits.
 
 
 7
 Based on an analysis of these Supreme Court rulings, as well as the opinion of a panel of the Fifth Circuit Court of Appeals,[6] the district court found the plaintiff's claim under the Civil Rights Act of 1871 barred by a perceived congressional intent, gleaned from the comprehensiveness of the remedial scheme in the Act itself, to preclude a Sec. 1983 remedy.
 
 
 8
 The district court's rationale, already undermined by the language and legislative history of the Food Stamp Act itself, has been further eroded by subsequent Supreme Court precedent. In Wright v. City of Roanoke, --- U.S. ----, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987), the Court examined the remedial devices contained in the United States Housing Act of 1937, 42 U.S.C. Sec. 1401 et seq., for evidence of congressional intent to bar a section 1983 remedy for violations of the Brooke Amendment to that Act, 42 U.S.C. Sec. 1437a. Wright provides a short survey of the relevant case law decided in the wake of Maine v. Thiboutot emphasizing the heavy burden resting on a state defendant to show congressional intent to preclude the pervasive Sec. 1983 remedy. The Court summarized by stating that "if there is a state deprivation of a 'right' secured by a federal statute, Sec. 1983 provides a remedial cause of action unless the state actor demonstrates by express provision from the statute itself that Congress intended to foreclose such private enforcement." Id. at ----, 107 S.Ct. at 771, 93 L.Ed.2d at 788.
 
 
 9
 In applying these precepts to the Housing Act, the Supreme Court concluded that the meager arsenal of private remedies afforded by that statute did not evidence a congressional aim to preclude Sec. 1983 actions to redress violations of the enforceable rights created by the Brooke Amendment. Under the provisions of the Housing Act, the Department of Housing and Urban Development (HUD) administers public housing authorities established throughout the country to provide affordable housing for low-income persons. The Housing Act directs HUD to require that each public housing authority provide formal administrative procedures for the resolution of tenant grievances. In addition to this private administrative remedy, HUD has statutory authority to audit, enforce annual contribution contracts, and cut off federal funding to the public housing authorities. Emphasizing that in prior cases where congressional intent to preclude Sec. 1983 actions was divined the particular statutes involved provided for private judicial enforcement, the Court declined to infer such a purpose based solely on the administrative remedies and the generalized supervisory powers of the federal agency contained in the Housing Act. Id. at ---- - ----, 107 S.Ct. at 773-74, 93 L.Ed.2d at 791-92.
 
 
 10
 The remedies found insufficient to bar a Sec. 1983 action in Wright are strikingly similar to the enforcement procedures afforded food stamp recipients under the Food Stamp Act. Like the Housing Act, the statute at issue does not authorize a private judicial remedy to test the decisions and policies of the state agencies administering the food stamp program. Rather, the Act mandates that the states establish administrative fair hearing procedures to redress complaints of aggrieved individuals. 7 U.S.C. Sec. 2020(e)(10).[7] As the Supreme Court stated in Wright, "the existence of a state administrative remedy does not ordinarily foreclose resort to Sec. 1983." Id. at ----, 107 S.Ct. at 773, 93 L.Ed.2d at 791. In addition, the Food Stamp Act grants the Secretary of Agriculture the power to enforce state compliance with the federal statute by administrative claims, withholding funds, or seeking injunctive relief against a recalcitrant state, Title 7 U.S.C. Sec. 2020(g),[8] generalized powers analogous to HUD's supervisory power over the local public housing authorities. As the Supreme Court reasoned in Wright, the generalized avenues of enforcement open to a federal agency are insufficient evidence of a congressional intent to prohibit a private judicial action under Sec. 1983. Id.
 
 
 11
 The Supreme Court, in dismissing the powers granted HUD to force state compliance with the provisions of the Brooke Amendment, noted that the Housing Act provided no formal mechanism for tenants to bring violations by the local public housing authorities to the attention of the federal agency. Therefore, the weapons of enforcement available to HUD provided no real remedy to individual tenants. While the Food Stamp Act itself provides no formal procedure for individual recipients to present their grievances to the Department of Agriculture, the applicable regulations set out a complaint procedure for problems "regarding such areas as processing standards and service to participants" which cannot be pursued through a fair hearing. 7 C.F.R. Sec. 271.6 (1986).
 
 
 12
 Although the recipients under the Food Stamp Act may have a better chance of invoking the enforcement powers of the administering federal agency than the tenants in Wright, the legislative history clearly indicates that this factor should not preclude suit under Sec. 1983. The chairman of the Senate Subcommittee on Nutrition commented on the power of the Department to seek injunctive relief against the states, emphasizing that the provision "is not to be interpreted as interfering in any way with the right of individual recipients or groups of recipients, in class actions or otherwise, to take their case to court." 123 Cong.Rec. 16349 (1977) (statement of Sen. McGovern).
 
 
 13
 Although the defendants seek to distinguish Wright by pointing to the broad range of remedies available under Florida law, which includes the right of judicial review of administrative decisions in state court,[9] common sense dictates that the intent of Congress cannot be inferred from the actions of a state legislature. Moreover, the existence of a state court remedy does not preclude a suit under Sec. 1983, "which was adopted to provide a federal remedy for the enforcement of federal rights." Id. at ----, 107 S.Ct. at 774, 93 L.Ed.2d at 792.
 
 
 14
 Given the similarity of the remedial schemes provided by Congress in the Housing Act and the Food Stamp Act, the reasoning of the Supreme Court in Wright compels the conclusion that a Sec. 1983 action is available to redress a violation of the Food Stamp Act.
 
 
 15
 This result is supported by provision of the Food Stamp Act itself as well as its legislative history. Both evidence a congressional purpose to leave the avenues of private judicial enforcement open. The statute, without providing an exclusive mechanism,[10] plainly contemplates enforcement through individual lawsuits. Section 2023(b) of the Food Stamp Act states in relevant part:
 
 
 16
 In any judicial action arising under this chapter, any food stamp allotments found to have been wrongfully withheld shall be restored only for periods of not more than one year prior to the date of the commencement of such action.
 
 
 17
 As the Fifth Circuit Court of Appeals stated, the clear import of this provision is that private action is a viable means of enforcing rights created by the Food Stamp Act since the Secretary of Agriculture is not authorized to judicially pursue restoration of food stamp allotments in individual cases. Victorian v. Miller, 813 F.2d 718, 724 (5th Cir.1987) (en banc).
 
 
 18
 The Act's legislative history furnishes further insight into Congress' understanding of the effect of the remedies set out in the federal statute upon the individual recipient's right to go to court. In the House Agriculture Committee report discussing the remedial measures provided in the 1977 amendment to the Act, the committee stated that "[t]he administrative remedies against the state contained in section 11(f) and elsewhere should not be construed as abrogating in any way private causes of action against states for failure to comply with Federal statutory or regulatory requirements." H.R.Rep. No. 464, 95th Cong., 1st Sess., 398, reprinted in 1977 U.S.Code Cong. & Ad.News 1704, 2327. The Senate report echoes the express reservation of private judicial enforcement rights. S.Rep. No. 180, 95th Cong., 1st Sess., 152 (1977). Indeed, the exhaustive congressional debates surrounding the 1977 revision of the Food Stamp Act conclusively demonstrate that the legislators relied heavily on prior private actions brought under the Act and contemplated future litigation by recipients to test and hone the provisions of that statute.[11]
 
 
 19
 In light of the conclusion of the Supreme Court in addressing the kindred remedial scheme at issue in Wright v. City of Roanoke and the overwhelming evidence of congressional intent to allow private actions to enforce the provisions of the Food Stamp Act, we hold that the plaintiff was entitled to pursue a Sec. 1983 action for redress of the violation, under color of state law, of her right to expedited food stamps. Having thus prevailed on the issue before the court as evidenced by the state's abandonment of the challenged policy, she is entitled to attorney's fees under Sec. 1988. We therefore reverse the judgment of the district court and remand the case for a determination of the appropriate fees.
 
 
 20
 REVERSED and REMANDED.
 
 
 
 [1]
 Title 42 U.S.C. Sec. 1983 Civil Action for deprivation of rights:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 
 
 [2]
 Title 7 U.S.C. Sec. 2020(e)(9) requires that the state agency administering the food stamp program shall:
 (A) provide coupons no later than five days after the date of application to any household which--
 (i)(I) has gross income that is less than $150 per month; or
 (II) is a destitute migrant or a seasonal farmworker household in accordance with the regulations governing such households in effect July 1, 1982; and
 (II)(i) has liquid resources that do not exceed $100; and
 (B) to the extent practicable, verify the income and liquid resources of the household prior to issuance of coupons to the household.
 
 
 [3]
 Title 42 U.S.C. Sec. 1988 provides in relevant part:
 In any action or proceeding to enforce a provision of section ... 1983 ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
 
 
 [4]
 The Court also held in that opinion that plaintiffs may win attorney's fees under Sec. 1988 for success in Sec. 1983 actions to enforce rights secured by any federal law, including non-civil rights statutes. 448 U.S. at 9, 100 S.Ct. at 2507, 65 L.Ed.2d at 562
 
 
 [5]
 Title 7 U.S.C. Sec. 2020(d) directs that each "State agency ... shall submit for approval" by the Secretary of Agriculture a "plan of operation specifying the manner in which [the food stamp] program will be conducted within the State in every political subdivision." State agencies are directly "responsible for the administration of the program within [each] State." 7 C.F.R. Sec. 271.4(a) (1985)
 
 
 [6]
 Finding no precedent in this circuit, the district court relied upon the reasoning of the Fifth Circuit Court of Appeals in Tyler v. Mmes. Pasqua & Toloso, 748 F.2d 283 (5th Cir.1984) which found the remedial scheme of the Food Stamp Act and the legislative history of the statute devoid of any congressional intent to authorize Sec. 1983 enforcement. The Fifth Circuit Court of Appeals, sitting en banc, subsequently overruled Tyler and sanctioned a private cause of action under Sec. 1983 for redress of violations of the Food Stamp Act. Victorian v. Miller, 813 F.2d 718 (5th Cir.1987) (en banc)
 
 
 [7]
 Section 2020(e)(10) provides:
 The State plan of operation ... shall provide, among such other provisions as may be required by regulation--, for the granting of a fair hearing and a prompt determination thereafter to any household aggrieved by the action of the State agency under any provision of its plan of operation as it affects the participation of such household in the food stamp program....
 
 
 [8]
 Section 2020(g) provides:
 If the Secretary determines ... that in the administration of the food stamp program there is a failure by a State agency without good cause to comply with any of the provisions of this chapter ... the Secretary may refer the matter to the Attorney General with a request that injunctive relief be sought to require compliance forthwith by the State agency and ... appropriate injunctive relief shall issue, and, whether or not the Secretary refers such matter to the Attorney General, the Secretary shall proceed to withhold from the State such funds authorized under sections 2025(a), 2025(c), and 2025(g) of this title as the Secretary determines to be appropriate....
 
 
 [9]
 The fair hearings required in Section 2020(e)(10) are conducted in Florida pursuant to that state's Administrative Procedure Act, Fla.Stat. Sec. 120.50, et seq. Section 120.68 of the Florida Administrative Procedure Act provides for judicial review in state court by any party adversely affected by final agency action
 
 
 [10]
 In contrast to food stamp recipients, food stores denied participation in the food stamp program and dissatisfied with administrative hearings on their grievance are provided an express right of judicial review in either United States district court or state court. "The suit in the United States district court or state court shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue." 7 U.S.C. Sec. 2023(a)
 
 
 [11]
 The legislative materials indicate that specific amendments to the Act were influenced by previous lawsuits or structured in anticipation of future judicial action. For example, the House Committee on Agriculture noted that a consent decree in a particular lawsuit "is an excellent model for new Department rules ... and should be adhered to nationwide." H.R.Rep. No. 464, 95th Cong., 1st Sess. 148, reprinted in 1977 U.S.Code Cong. & Ad.News 1978, 2118. The Committee further stated during that same report that explicit provisions regarding income criteria were being added to the statute to prevent "frequent judicial invalidation of the Department's income regulations and instructions as inconsistent with Congressional goals." H.R.Rep. No. 464, supra at 19, reprinted in 1977 U.S.Code Cong. & Ad.News 1978, 1995-96. Furthermore, the congressional reports and debates make reference to private suits including claims under Sec. 1983 without comment. See e.g., Bush v. Bays, 463 F.Supp. 59 (E.D.Va.1978), cited in H.R.Rep. No. 788, 96th Cong., 2d Sess. 144, reprinted in 1980 U.S.Code Cong. & Ad.News 977; Dupler v. City of Portland, 421 F.Supp. 1314 (D.Me.1976), cited at H.R.Rep. No. 464, 95th Cong., 1st Sess. 147, reprinted in 1977 U.S.Code Cong. & Ad.News 2191