857 F.2d 737
 Bennita N. DAVIS and Charles L. Maddox, individually and on
behalf of those similarly situated, Plaintiffs-Appellants,
Joanne P. Payne and Mary L. Wilson, Intervenors,
v.
The MOBILE CONSORTIUM OF CETA; Gary A. Greenough,
individually and in his capacity as Administrative Arm of
the Mobile Consortium of CETA; Gary A. Greenough; Dan
Wiley; Neal Lauder; and Devon Wiggins, individually and in
their official capacity as the Executive Committee of the
Mobile Consortium of CETA; Mobile County, Alabama; Mobile
County's Sheriff's Department; Thomas J. Purvis, Sheriff,
individually and in his capacity as Sheriff of Mobile
County; Mobile County Personnel Board; Bernard M.
Richardson, Jr., individually and in his capacity as
Personnel Director of the Mobile County Personnel Board;
Hollinger's Island Patrol; L.D. Strickland, individually
and in his capacity as Chief of Hollinger's Island Patrol;
L.D. Strickland; Steven C. Powe; Bill Sharp; Stanley L.
Bell; W.T. Ponder; Colonel Sloan; Cathy W. Davis;
Robert I. Story and Evelyn Payne in their capacity as
members of the Board of Governors of Hollinger's Island
Patrol; F. Ray Marshall, individually and in his capacity
as Secretary of Labor and David Duncan, individually and in
his capacity as Regional Administrator of the United States
Department of Labor Employment & Training Administration,
Defendants-Appellees.
 No. 87-7211.
 United States Court of Appeals,
Eleventh Circuit.
 Oct. 12, 1988.
 
 Abigail Turner, Legal Services Corp. of Alabama, Mobile, Ala., for plaintiffs-appellants.
 James C. Bell, James C. Wood, Simon, Wood & Crane, Mobile, Ala., for Hollinger's, Strickland, Powe, Bell, Ponder, Sloan, Davis, Sharpe, Story and Payne.
 Calvin Clay, Clay, Massey & Clay, Mobile, Ala., for Mobile Consortium of CETA.
 James B. Rossler, Stout, Roebuck & Rossler, Mobile, Ala., for Sheriff Purvis.
 Appeal from the United States District Court for the Southern District of Alabama.
 Before RONEY, Chief Judge, JOHNSON, Circuit Judge, and TIDWELL*, District Judge.
 JOHNSON, Circuit Judge:
 
 
 1
 This case involves an appeal by plaintiffs from the entry of judgment after trial on their claims brought under 42 U.S.C.A. Sec. 1983. We affirm.
 
 I. BACKGROUND
 
 2
 Bennita Davis and Charles Maddox filed a class action in 1979 complaining under Sec. 1983 of the inadequacy of the grievance procedures provided by The Mobile Consortium of CETA ("Consortium") and its sub-grantees. The Consortium was organized as a "prime sponsor" under the Comprehensive Employment and Training Act, 29 U.S.C. Sec. 801 et seq., ("CETA" or "the Act"),[1] and as such received funds under the direction of the United States Department of Labor ("DOL") to assist in the job training of unemployed and underemployed adults in the Mobile area. The Consortium, in turn, distributed funds to various sub-grantees, including defendants Mobile County Sheriff's Department and the Hollinger's Island Patrol, who then actually employed the CETA participants. Under the Act, the Consortium was required to establish and maintain a grievance procedure available to all participants it funded. 29 U.S.C. Sec. 816(a)(2); 29 C.F.R. Sec. 96.14(b)(2)(i)(F)(5) (1977). The Act charged DOL with overseeing the operation of the grievance procedures of prime sponsors and permitted employees who had exhausted such procedures to file a complaint with a DOL Regional Administrator. 29 U.S.C. Sec. 816(b); 29 C.F.R. Sec. 98.40-.45 (1977). The Administrator's opinion could be appealed to an Administrative Law Judge ("ALJ") of the DOL. ALJ decisions, after review by the Secretary of the DOL, were appealable to the United States Court of Appeals. 29 U.S.C. Sec. 817(a); 29 C.F.R. Sec. 98.46-.48 (1977).
 
 
 3
 Bennita Davis, a black female, was employed under CETA as a process server with the Mobile County Sheriff's Department from March 31, 1975 to October 7, 1977.[2] Davis' employment was terminated shortly after she filed suit against a man who attacked her when she served him a subpoena. Although both the attack and the discharge may have been racially motivated, the only issues raised in this appeal concern the adequacy of the procedures afforded Davis by the Consortium.
 
 
 4
 When Davis began work, she was not informed that a grievance procedure was available to employees wishing to have their discharges reviewed. In 1977, the Consortium began distributing a pamphlet explaining the grievance procedure. Davis was never orally informed by the Consortium of the contents of the pamphlet, nor was there a "certificate of understanding" in her file evidencing that the rules had been explained to her. At trial, it was disputed whether she was informed orally of the procedure the day before she was fired. After she was released, her attorney wrote a letter to the head of the Consortium asking him to contest Davis' dismissal and to inform her of the proper grievance procedure. The Consortium did not deem the letter to constitute an official complaint and did not act upon it. Davis filed a complaint with the DOL shortly after being fired. The DOL determined that Davis had been fired in retaliation for "the racial incident" (the attack during subpoena service). The Consortium then requested a formal hearing challenging the DOL findings. A hearing was scheduled but was voluntarily and jointly dismissed with prejudice, apparently because the present Sec. 1983 action was pending in district court.
 
 
 5
 Charles Maddox was employed as a CETA participant by the Hollinger's Island Patrol, a community watch group. He was terminated and, unlike Davis, filed a proper grievance with the Consortium. Maddox initially was denied relief by a Consortium "Training Specialist," but eventually the Consortium Grievance Committee found in his favor for the sum of $539.07 (medical benefits he would have received plus lost wages). Maddox, who had found unsubsidized employment quickly but had quit due to an injury, appealed the decision to the DOL because he disagreed with the damage calculation. The DOL affirmed as to liability, but reduced the damage award. Maddox failed to appeal this decision to the Court of Appeals as was his statutory right, 29 U.S.C.A. Sec. 817(a), choosing instead to file the present action.
 
 
 6
 Davis and Maddox claim that CETA and the due process clause of the Fourteenth Amendment, enforceable through Sec. 1983, provide them with remedies for their discharge by the Consortium's sub-grantees.
 
 II. DISCUSSION
 A. Cause of Action Under Sec. 1983
 
 7
 The Supreme Court held in Maine v. Thiboutot, 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980), that state actors could be sued under Sec. 1983 for violating rights granted by federal statutes. However, subsequent decisions have limited the right to sue when the federal statute in question is part of a comprehensive enforcement scheme which does not preserve causes of action outside the statutory framework. See Middlesex Co. Sewerage Auth. v. National Sea Clammers, Inc., 453 U.S. 1, 19-21, 101 S.Ct. 2615, 2625-27, 69 L.Ed.2d 435 (1981) (cause of action against polluters based on Sec. 1983 barred by the scheme of redress provided by the Clean Water Act); Smith v. Robinson, 468 U.S. 992, 1009-12, 104 S.Ct. 3457, 3466-69, 84 L.Ed.2d 746 (1982) (action under Sec. 1983 precluded by administrative scheme in Education of the Handicapped Act).
 
 
 8
 Following Sea Clammers, the Second Circuit held that the grievance procedures established by CETA were "comprehensive" and precluded Sec. 1983 causes of action. Uniformed Firefighters Ass'n v. City of New York, 676 F.2d 20, 22 (2d Cir.), cert. denied, 459 U.S. 838, 103 S.Ct. 84, 74 L.Ed.2d 79 (1982).[3] Uniformed Firefighters is on point and is persuasive. It relies on an earlier Second Circuit opinion which, after analyzing the legislative history, described the CETA remedial scheme as follows:
 
 
 9
 The totality of [CETA's] provisions, comprehensive and well-crafted to the Act's administrative, institutional, and political experiences, affirms the primacy and suggests the exclusivity of the grievance procedures, at least in cases seeking redress against a prime sponsor or other recipient of funds.
 
 
 10
 CETA Organizing Comm. v. City of New York, 617 F.2d 926, 930-31 (2d Cir.1980). CETA, and the regulations implementing it, gave a recipient the opportunity to complain of a CETA employer's actions to its prime sponsor, to the DOL, and, failing all, to a federal appellate court.
 
 
 11
 The experiences of both Davis and Maddox illustrate the potential for remediation within the CETA statutory framework. Although Davis was uninformed of her rights and ignored by the Consortium, she was able to obtain a favorable determination by the DOL, the next level in the review process. Maddox went through the local grievance process and through the DOL until finally choosing to bring a Sec. 1983 action rather than appeal under 29 U.S.C. Sec. 817(a).
 
 
 12
 However, the Supreme Court has held that resort to Sec. 1983 is not to be foreclosed lightly. In Wright v. Roanoke, 479 U.S. 418, 107 S.Ct. 766, 771-73, 93 L.Ed.2d 781 (1987), the Court held that a Sec. 1983 action could be brought against local housing authorities for their violation of the Federal Housing Act. Like CETA, the Federal Housing Act requires local authorities to establish grievance procedures. However, the Housing Act provides no administrative mechanism whereby individuals can enforce those regulations against the local authorities. The Supreme Court analyzed the role of the Department of Housing and Urban Development ("HUD") in enforcing the Housing Act:
 
 
 13
 HUD itself has never provided a procedure by which tenants could complain to it about alleged failures of [local authorities] to abide by their annual contribution contracts, the Brooke Amendment or HUD regulations; nor has it taken unto itself the task of reviewing [local] grievance procedure decisions.
 
 
 14
 Id. 107 S.Ct. at 772. Tenants with grievances against local authorities cannot formally go to HUD with their complaints. CETA employees, on the other hand, had the right to pursue their grievances to the DOL and beyond. The Housing Act's administrative remedial framework is significantly less comprehensive than CETA's. See also Gonzalez v. Pingree, 821 F.2d 1526, 1529 (11th Cir.1987) (action under Sec. 1983 permitted to enforce Food Stamp Act where no administrative procedure allowed complaints to be brought against local authorities). The remedial framework established by CETA evidences Congressional intent to foreclose resort to Sec. 1983 for violations of CETA and regulations implementing it.
 
 
 15
 Davis and Maddox argue that the savings clause contained in CETA explicitly preserved their Sec. 1983 cause of action:
 
 
 16
 The existence of remedies under the section shall not preclude any person, who alleges that an action of a prime sponsor or of any other recipient violates any of the provisions of the Act or the regulations promulgated under the Act, from instituting a civil action or pursuing any other remedies authorized under federal, state, or local law.
 
 
 17
 29 U.S.C. Sec. 816(l ). Appellants argue that the savings clause is unambiguous and clearly authorized Sec. 1983 actions. In Uniformed Firefighters, 676 F.2d at 23, the Second Circuit rejected appellants' interpretation, stating briefly that in Sea Clammers, 453 U.S. at 20-21 n. 31, 101 S.Ct. at 2626-27 n. 31, the Supreme Court had held that a very similar savings clause in the Clean Water Act, 33 U.S.C.A. Sec. 1365(e), did not preserve Sec. 1983 actions based on violations of the Clean Water Act itself.
 
 
 18
 One decision of this Court has interpreted the CETA savings clause. See Black v. Broward Co. Emp. and Training Admin., 846 F.2d 1311, 1313-14 (11th Cir.1988) (pursuing remedies in CETA administrative procedures did not toll statute of limitations for Title VII claim). The Court in Black divided the universe of potential suits into "CETA based" claims (i.e., failure by a grantee to follow a CETA regulation), and "non-CETA based" claims (i.e., Title VII or federal constitutional claims arising out of CETA employment). It held that a Title VII claimant's cause of action was not tolled during the time she pursued her CETA administrative remedies and stated, "When the action is based upon the federal Constitution or a federal statute other than CETA, as in this case, it is plain that there is no exhaustion," because the savings clause authorized an immediate suit. Id. at 1313-14. The Court in Black noted that Uniformed Firefighters, 676 F.2d at 23, seemed to support such an interpretation, because after holding no Sec. 1983 cause of action was authorized by the savings clause, the Second Circuit did go on to address the merits of the non-CETA equal protection claims presented. See also International Paper Co. v. Ouellette, 479 U.S. 481, 107 S.Ct. 805, 812, 93 L.Ed.2d 883 (1987) (actions against a polluter based on the state law of the location of the polluter are authorized by the savings clause of the Clean Water Act).
 
 
 19
 The Court in Black provides a solid rationale for accepting the Second Circuit's rejection of a Sec. 1983 cause of action based solely on a violation of CETA or regulations promulgated thereunder. Therefore, we hold that appellants' Sec. 1983 claims based on the federal constitutional right to due process are authorized by the savings clause, while their purely CETA based claims are not.
 
 B. Merits of Due Process Claims
 
 20
 The Fourteenth Amendment provides no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amendment XIV, Sec. 2. In appellants' case, the process employed by the Consortium was faulty and inadequate; therefore, appellants' constitutional claim rises or falls on the existence of a property right in CETA employment. This Court has previously held that "[n]either CETA nor its regulations required a showing of good cause before a CETA participant-employee could be terminated." Fonville v. Donovan, 740 F.2d 917, 919 (11th Cir.1984). As employees subject to discharge at will, CETA participants had no property interest in their jobs. See Blanton v. Griel, 758 F.2d 1540, 1543 (11th Cir.1985) ("a state employee who may be discharged at will under state law does not have a property interest in his continued employment and is not entitled to the protection of due process"); accord Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir.1983). Both the CETA statute, 29 U.S.C. Sec. 816(a)(2), and DOL regulations, 29 C.F.R. Sec. 98.26, provided CETA employees with grievance procedures, but did not restrict the grounds on which they could be discharged. As such, they established no expectation of entitlement. See Zeigler, 716 F.2d at 849, ("The grievance procedure does not establish any grounds upon which a dismissal must be based ... and thus does not create a property interest in plaintiff's employment.").
 
 
 21
 Other courts have overwhelming held that CETA participants are at-will employees with no property right in continued employment. See e.g. Hayward v. Henderson, 623 F.2d 596, 597 (9th Cir.1980); Gooley v. Conway, 590 F.2d 744, 746 (8th Cir.1979); Maloney v. Sheehan, 453 F.Supp. 1131, 1141 (D.Conn.1978).
 
 
 22
 In spite of the precedent holding that CETA employees were subject to discharge at will and therefore without a valid property interest, appellants argue that the Consortium's actual practices established a protected expectation of for cause discharge.[4] Appellants rely on Perry v. Sindermann, 408 U.S. 593, 599-602, 92 S.Ct. 2694, 2698-2700, 33 L.Ed.2d 570 (1972) (Texas teachers handbook and other representations made to teacher created expectation of tenure after 10 years of employment), for the proposition that a property interest may be created in a job when the employer by his representations has created a legitimate expectation of continued employment. In support of their argument, appellants offered evidence that the practice of the Consortium was to approve only discharges for cause.[5] However, the unsurprising showing that the Consortium may have disapproved of arbitrary discharges does not establish the existence of a for cause regime which generated protectable property rights. See Blanton, 758 F.2d at 1543 (11th Cir.1985) (mere fact that "statute provides specific reasons for which a probationary employee may be discharged" does not establish property right); Zeigler, 716 F.2d at 849. See also Perry, 408 U.S. at 601, 92 S.Ct. at 2699 (plaintiff must prove "mutually explicit understandings").
 
 
 23
 Under Perry, the key factor in finding a property interest is the type of representations made to the employees. Id. at 599-602, 92 S.Ct. at 2698-2700. The district court found as a matter of fact that "plaintiffs failed to prove that any [for cause discharge] practice, if it existed, was communicated to participants at the time of enrollment in the program." (Opinion at 31). Appellants presented evidence on the Consortium's treatment of its sub-grantees regarding discharges, but failed to show that the Consortium or its sub-grantees made any representations to CETA participants which would give rise to an entitlement of continued employment. In fact, appellants have argued that they were not apprised of the very grievance procedure upon which they partially base their expectation of for cause discharge. Viewed in their entirety, the rules, regulations, and representations made to CETA participants explaining their rights and responsibilities do not establish a "mutually explicit understanding" that appellants could only be terminated for cause. Appellants failed to prove a property interest in their employment and, therefore, their constitutional Sec. 1983 claims were properly denied.
 
 
 24
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable G. Ernest Tidwell, U.S. District Judge for the Northern District of Georgia, sitting by designation
 
 
 [1]
 Since CETA was repealed effective October 1, 1982, all citations to the Act are from the 1976 version of the United States Code (Supp. V 1981)
 
 
 [2]
 In spite of the fact that at the time CETA limited a participant's employment to two years, see 29 U.S.C. Sec. 821(a) (Supp.III 1973), Davis had requested and received two 90 day extensions. Such extensions were not uncommonly granted
 
 
 [3]
 The Supreme Court has cited Uniformed Firefighters, stating in dicta that "the federal courts have uniformly held that the statutory complaint mechanism is the sole means of redress for a private party injured by a grant recipient's violation of CETA." Brock v. Pierce Co., 476 U.S. 253, 106 S.Ct. 1834, 1840, 90 L.Ed.2d 248 (1986) (DOL not time-barred from recovering misused funds after 120 days)
 
 
 [4]
 Appellants do admit that their potential employment was limited to 104 weeks by the CETA statute. See 29 U.S.C. Sec. 821(a) (Supp.III 1973). They recognize that damages would be limited to 104 weeks back pay minus the amount of weeks actually worked under the program. Davis and any other member of the class like her who had already worked more than 104 weeks, would seem to have no legitimate expectation of continued employment and therefore no cognizable property interest
 
 
 [5]
 The fact that Maddox obtained damages for his discharge from the Consortium is some evidence of this. Common sense also suggests that the Consortium might have wanted to keep arbitrary discharges at a minimum to maintain an effective program