**Edna S. Delgado GREO, et al., Plaintiffs,**

v.

**Marcelo TRUJILLO, et al., Defendants.**

**Civil No. 01–1389 (JAG).**

United States District Court,
D. Puerto Rico.

June 2, 2003.

Pablo Landrau–Pirazzi, Ivan M. Castro–Ortiz, Eliezer Aldarondo–Ortiz, Claudio Aliff–Ortiz, Aldarondo & Lopez Bras, Hato Rey, PR, for Plaintiffs.

Johanna M. Emmanuelli–Huertas, Ponce, PR, Grisselle Gonzalez–Negron, Faccio & Pabon Roca, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

On April 2, 2001, plaintiffs, all employees of the Southeastern Consortium[1] ("the Consortium"), brought suit against the Mayor of the Municipality of Humacao and President of the Southeastern Consortium's Board of Mayors, Marcelo Trujillo; the Municipality of Humacao; the Southeastern Consortium; and the Executive Director of the Southeastern Consortium, Luis E. Gonzales Torres (collectively "defendants"). Plaintiffs seek redress under 42 U.S.C § 1983 and the Fourteenth amendment alleging that defendants discriminated against them on the basis of their political affiliation. Defendants moved to dismiss for lack of subject-matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). They argue that the Workforce Investment Act ("WIA"), 29 U.S.C. §§ 2801–2945, precludes § 1983 claims because it provides an exclusive administrative procedure for discrimination claims under the act. For the reasons discussed below, the Court **DENIES** defendants' motion to dismiss.

## FACTUAL BACKGROUND

The Southeastern Consortium is a nonprofit partnership between the municipalities of Humacao, Patillas, Maunabo, Yabu-

coa, Las Piedras, Juncos, and San Lorenzo. (Docket No. 47 at 3, 13). Following the Puerto Rico general elections on November 7, 2000, Popular Democratic Party ("PDP") mayoral candidates were elected to four of the Consortium's municipalities, namely Humacao, Maunabo, Juncos, and San Lorenzo (*Id.* at 5–6). In Las Piedras, the NPP incumbent mayor was reelected, and in Patillas and Yabucoa, the NPP candidates won the elections (*Id.*) The PPD winning candidates were Joe Román ("Román") in San Lorenzo; Alfredo Alejandro ("Alejandro") in Juncos; Marcelo Trujillo ("Trujillo") in Humacao; and Jorge Márquez ("Márquez") in Maunabo (*Id*). As a result of the change in power in the various municipalities, PDP affiliates gained control of the Consortium's Board of Mayors ("the Board")(*Id.*). Consequently, three of the PDP mayors became president, vice president and clerk of the Board (*Id.* at 7). On January 16, 2001, the Board met and discussed personnel appointments to the respective local offices (*Id.*). Plaintiffs, who are all members of the New Progressive Party ("NPP"), allege that as a result of that meeting, starting on January 23, 2001 and through January 2002 (*Id.* at 3, 13), defendants transferred, discharged, demoted, or did not renew their contracts with the Consortium based on their party affiliation (*Id.* at 8–46). They claim that this political discrimination began on January 23, 2001 and lasted until January 2002.

---

1. Plaintiffs are: Edna S. Delgado Greo, Marta S. Lebron Ortiz, Sonia I. Gordian Cruz, Elizabeth A. Boyle Reyes, Elicier Lopez Hernandez, Roberto Cruz Rodriquez, Sobeida Gonzalez Disdier, Rafael Rondon Fonseca, Wilma Reyes Ayala, Brenda Liz Alejandro Rodriquez, Freddy A. Rodriquez Rodriquez, Hector A. Marquez Neris, Miguel Angel Gonzales Diaz, Izaida M. Garcia Cruz, Ana M. Martinez, Jesus Agosto Zayas, Ovidio Calderon Velazquez, Jose A. Lebron Peña, Sandra Enid Clemente Rosado, Miriam Ortiz Burgos, Zulma V. Pagan Luyando, Gloria E. Matos Morales, Marisol Castro Gomez, Ketty M. Sanchez Cardona, Betzaida Vega Davila, Lisaris Vellon Castro, Maria del Carmmen Morrabal Roman, Heriberto Sierra Gonzalez, Maria del C. Pagan Santiago, Luz Selenia Navarro Neris, Luz Eneida Torres Montañez, Hilda M. Sanchez Castro, Diana Berberena Rivera, Marylin Pagan Perez, Luis F. Sanchez Rivera, Sonia N. Miranda Perez, and Margarita Aponte Cruz.

Plaintiffs brought suit on April 2, 2001, arguing that the defendants' sole purpose in their personnel decisions was to politically discriminate against them in violation of the First Amendment and Puerto Rico Law (*Id.* at 47). They further argue that the defendants conspired to deprive them of their rights under the Fourteenth Amendment (*Id.*). Plaintiffs also claim defendants violated § 2938(a)(2) of the WIA (*Id.* at 8).

Defendants filed a motion to dismiss on August 21, 2002, arguing that the Court lacks subject-matter jurisdiction over plaintiffs' complaint because WIA's administrative procedure provides the exclusive remedy for discrimination claims brought under the Act (Docket No. 62). In their opposition (Docket No. 73), plaintiffs argue that WIA's statutory language does not expressly preclude § 1983 claims nor implies congressional intent to do so (Docket No. 82).

## DISCUSSION

### A. *Standard of Review of a Rule 12(b)(1) Motion to Dismiss*

Pursuant to Fed.R.Civ.P. Rule 12(b)(1) a defendant can assert that the Court lacks subject matter jurisdiction to entertain an action. When deciding whether to dismiss a complaint for lack of subject matter jurisdiction, the Court "may consider whatever evidence has been submitted, such as ... depositions and exhibits." *See Aversa v. United States,* 99 F.3d 1200, 1210 (1st Cir.1996).

Motions brought under Rule 12(b)(1) are subject to the same standard of review for Rule 12(b)(6) motions. *Negron–Gaztambide v. Hernandez–Torres,* 35 F.3d 25, 27 (1st Cir.1994); *see Torres Maysonet v. Drillex, S.E.,* 229 F.Supp.2d 105, 107 (D.P.R.2002). Dismissal is proper "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." *Gonzalez–Morales v.*

*Hernandez–Arencibia,* 221 F.3d 45, 48 (1st Cir.2000) (*quoting Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir. 1990)). The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiffs' favor. *See Correa–Martinez,* 903 F.2d at 51; *Torres Maysonet,* 229 F.Supp.2d at 107. When evaluating the complaint's allegations, the Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like". *See Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996).

In opposing a Rule 12(b)(6) motion, plaintiffs are responsible for putting their best foot forward in an effort to present a legal theory that will support their claim. *McCoy v. Massachusetts Institute of Tech.,* 950 F.2d 13, 22 (1st Cir.1991)(*citing Correa–Martinez,* 903 F.2d at 52). Plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *See Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988) and "cannot expect a trial court to do his homework for him." *McCoy,* 950 F.2d at 23.

### B. *Section 1983 claim*

Congress enacted § 1983 to create a remedy for the deprivation of the rights, privileges or immunities granted by the Constitution or laws of the United States. *Blessing v. Freestone,* 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997). To prevail in a § 1983 claim, plaintiffs bear the burden of showing that defendants were acting under color of state law and deprived them of their federal constitutional rights. *See, e.g., Romero–Barcelo v. Hernandez–Agosto,* 75 F.3d 23, 32 (1st Cir.1996). It is well-established that political discrimination restrains freedom of belief and association, core activi-

ties protected by the First Amendment, *see Elrod v. Burns,* 427 U.S. 347, 354, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Padilla–Garcia v. Rodriguez,* 212 F.3d 69, 74 (1st Cir.2000). Plaintiffs, therefore, can generally bring a § 1983 claim premised on the deprivation of these First Amendment rights.

 Nonetheless, congressional intent is crucial in determining whether WIA plaintiffs' rights are enforceable under § 1983. *Blessing,* 520 U.S. at 341, 117 S.Ct. 1353. Congress can foreclose a remedy under § 1983 by expressly forbidding it in the statute, or "impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983". *Id.* (quoting *Livadas v. Bradshaw,* 512 U.S. 107, 133, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994)). There is a strong presumption that Congress intended to allow § 1983 suits, and the burden of establishing the contrary rests on defendants. *Stowell v. Ives,* 976 F.2d 65, 70, n. 5 (1st Cir.1992). *See Victorian v. Miller,* 813 F.2d 718, 721 (5th Cir.1987). Likewise, plaintiffs need not ordinarily exhaust administrative remedies before filing a suit under § 1983. *Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Unless statutorily mandated, "application of the exhaustion doctrine is not a jurisdictional requirement, but within the discretion of the district court". *Accion Social de Puerto Rico, Inc. v. Viera Perez,* 831 F.2d 365, 369 (1st Cir.1987)(internal citations omitted.)

## C. *Foreclosure of a § 1983 claim in the WIA and exhaustion of administrative remedies.*

### 1. *Express foreclosure*

The first part of our inquiry is whether Congress expressly foreclosed recourse to § 1983 in the WIA statute. *Stowell,* 976 F.2d at 67. Defendants claim that § 2938(a)(2) of the statute provides the remedial scheme for discrimination in programs operating under the WIA precluding § 1983 suits (Docket No. 96 at 2).

### a. *The WIA statute*

Section § 2938(a)(2) provides that no individual shall be subjected to discrimination due to his or her political affiliation or belief. This provision, however, does not specify any grievance procedures to be followed and does not state whether administrative remedies must be exhausted prior to filing suit under § 1983. Defendants contend that the authority given to the Secretary of Labor (the "Secretary") to issue regulations pursuant to § 2938(e) evinces Congress' intent to foreclose § 1983 suits for discrimination claims. (Docket No. 92 at 7). Furthermore, they argue that the exhaustion of administrative remedies is warranted because § 2938(e) requires that the regulations adopted ensure that complaints "are processed in a manner that avoids duplication of effort." 29 U.S.C. § 2938(e). (Docket No. 92 at 2; Docket No. 112 at 2). They argue that the only way to avoid such a duplication in a political discrimination case is to give the Civil Rights Center ("CRC") office within the Department of Labor created under WIA, sole jurisdiction over political discrimination complaints and require the exhaustion of administrative remedies. (Docket No. 112 at 2–3). Section 2938(e) establishes that the regulations "should adopt standards for determining discrimination and procedures for enforcement", yet it does not state that the administrative procedures must be exhausted nor that these procedures are the exclusive remedy available to § 2938 complainants.

 Defendants further contend that § 2938's lack of specific language with regards to other remedies available to complainants, such as that found in other sections of the Act, evinces a congressional

intent to make the administrative procedures the exclusive mechanism for non-discrimination claims. (Docket No. 96 at 9). In the absence of specific language, however, the Court may only conclude the contrary: Congress did not intend to foreclose § 1983 claims. *See Smith v. Robinson,* 468 U.S. 992, 1012, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984); *Victorian,* 813 F.2d at 721. *See also Frazier v. Fairhaven School Committee,* 276 F.3d 52, 62 (1st Cir.2002).

Defendants also argue that § 2931(c)(4), which encompasses violations under § 2938, states that the remedies available for violations of WIA, shall not "be construed to prohibit a grievant or complainant from pursuing a remedy authorized under another Federal, State, or local law" only applies to participants in the employment program (Docket No. 112 at 4). This argument is unavailing. The section clearly refers to "violations of any requirement of this chapter [29 U.S.C. § 2801 et seq.]", thus including not only § 2938 but the entire statute. See 29 U.S.C. § 2931(c)(1),(3) and as such, applies to plaintiffs.

b. *The WIA's regulation*

■ Defendants further argue that the safeguards provided in the regulations evince congressional intention to preclude § 1983 claim (Docket No. 96 at 8). The WIA's administrative procedure requires that recipients, in this case the Consortium, establish local grievance procedures. 29 C.F.R. §§ 37.23, 37.76. Recipients must designate an Equal Opportunity Officer to serve as a liaison with the CRC and to make sure that subrecipients do not offend the non-discrimination provision. 29 C.F.R. §§ 37.23, 37.25. They must also provide initial and continued notice of nondiscrimination policy to registrants, applicants, participants, applicants for employment, employees, unions, professional organizations, subrecipients, and members of the public in general. 29

C.F.R. § 37.30. That notice must contain the information established in the regulations regarding complaint filing procedures and deadlines. *See* 29 C.F.R. §§ 37.30, 37.31. Any person who believes that he or she has been subjected to discrimination may file a complaint either with the recipient or the CRC. 29 C.F.R. §§ 37.70–37.72. Each recipient's grievance procedure must comply with the guidelines and required elements established in § 37.76.

When the recipient's Equal Opportunity Officer determines it has no jurisdiction over the complaint, it must notify the complainant that he or she has a right to file a complaint with the CRC. 29 C.F.R. § 37.78. The Director of the CRC may not accept the complaint if "(a) it was not timely filed; (b) the CRC lacks jurisdiction over the complaint; or (c) the CRC has previously decided the matter." *Id.* at § 37.82.

Defendants contend that pursuant to § 38.85(c)(2), when the complaint arises under § 2938, the CRC has sole jurisdiction, and plaintiffs must exhaust the above mentioned procedures before seeking any remedy in federal court. (Docket No. 96 at 8.) Section 38.85(c)(2) states in relevant part:

(c) Where the complaint alleges discrimination by an entity that operates a program or activity financially assisted by a Federal grant making agency other than the Department, but that participates as a partner in a One–Stop delivery system, the following procedures apply: ... (2) **Where the complaint alleges discrimination on a basis that is prohibited by Section 188 of WIA, but not by any civil rights laws enforced by the Federal grantmaking agency, then the CRC has sole jurisdiction over the complaint, and will retain the complaint and process it pursuant to this**

part. **Such bases generally include religion, political affiliation or belief,** . . . .

29 C.F.R. § 38.85(c)(2)(emphasis added). Defendants argue that because political affiliation is included in this section, plaintiffs must exhaust the administrative procedures (Docket No. 96 at 2–3, 8).

 Defendants do not claim, however, that the Consortium is an entity operating a program or activity as defined in § 38.85(c)(2). Furthermore, the Court's inquiry centers on the statutory language and not the regulations adopted. *Stowell,* 976 F.2d at 67. Plaintiffs' "ability to invoke § 1983 cannot be defeated simply by '[t]he availability of administrative mechanisms to protect the plaintiff's interests." *Blessing,* 520 U.S. at 347, 117 S.Ct. 1353 (*quoting Golden State,* 493 U.S. 103, 106, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989)). Moreover, § 1983 is still available even when the Secretary's oversight powers are accompanied by state grievance procedures. *Blessing,* 520 U.S. at 348, 117 S.Ct. 1353 (internal citations omitted.)

In sum, the WIA does not contain any particular phraseology that unmistakably evinces Congressional intent to foreclose a § 1983 claim or require exhaustion of the procedures available under it's regulations. *Cf. Frazier,* 276 F.3d at 62 (holding that by adopting a particular phraseology in the Individuals with Disabilities Education Act ("IDEA"), Congress unmistakably evinced its intent to require exhaustion of the administrative procedures available under IDEA). This conclusion, however, does not end our inquiry. Congress may have impliedly foreclosed recourse to § 1983.

### 2. *Implied Foreclosure*

To determine whether Congress impliedly foreclosed recourse to § 1983, the Court must review legislative history and other traditional aids of statutory interpretation to determine congressional intent.

*Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. 1, 13, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981)(internal citations omitted); *Frazier,* 276 F.3d at 68 (*citing Sterling Suffolk Racecourse Ltd. P'ship v. Burrillville Racing Ass'n,* 989 F.2d 1266, 1268 (1st Cir. 1993)).

The WIA's legislative history is silent with regards to discrimination claims, exhaustion of grievance procedures, or preclusion of § 1983 claims. *See* P.L. 102–220. *See also* H.R.Rep. No. 105–689 (1998) *reprinted in* 1998 U.S.C.C.A.N. 332. Furthermore, no Circuit or District court has addressed the matter.

 In light of the statute's silence and the absence of judicial guidance, the court looks to WIA's predecessor statutes and their corresponding caselaw: the Job Training Partnership Act ("JTPA") 29 U.S.C. §§ §§ 1501–1792b, and the Comprehensive Employment Training Act ("CETA"), 29 U.S.C §§ 201–999. Plaintiffs contend that WIA did not overrule these cases and consequently, § 1983 remains a viable alternative (Docket No. 99 at 5–7). The First Circuit has not answered this question, and the Courts that have dealt with the issue under both the JPTA and the CETA have arrived at different conclusions. For example, in *Uniformed Firefighters Ass'n v. City of New York,* 676 F.2d 20 (2nd Cir.1982), the Second Circuit held that CETA precluded a § 1983 claim. Following the Supreme Court's decision in *Sea Clammers,* the Circuit Court found that, even in light of the statute's savings clause, CETA's comprehensive remedial scheme provided the exclusive remedy. *Uniformed Firefighters,* 676 F.2d at 22–23. The Circuit Court, however, proceeded to decide the § 1983 equal protection claim. *See* 676 F.2d 20.

Other circuit courts have therefore interpreted *Uniformed Firefighters* to mean

tional claim. Following the *AFSCME Lo-cal 506* decision, the District Court of Pennsylvania held in *Berry v. Pennsylvania Pressed Metals, Inc.*, that according to § 1574(g) of the act, JTPA's administrative procedure provided relief for plaintiff's claims (his discharge in breach of the JTPA contract). 846 F.Supp. 27, 29–31 (M.D.Pa.1994). As in the previous case discussed, the case was not a federal constitutional claim.[2]

██ In sum, these cases do not support the conclusion that WIA complainants are barred from bringing § 1983 claims without first exhausting administrative procedures. The statute does not expressly manifest Congress' intent to foreclose such claims; nor can the Court find an implied congressional intent to do so. The Court may not lightly infer or conclude that Congress intended to preclude § 1983 claims to remedy the deprivation of federally secured rights subject to WIA. *See Smith,* 468 U.S. at 1012, 104 S.Ct. 3457; *Victorian,* 813 F.2d at 721.

In conclusion, defendants have failed to "muster adequate evidence of Congress' prohibitory intent." *Stowell,* 976 F.2d at 70, n. 5. They have not met their burden of showing that "the remedial devices provided in [the Act] are sufficiently comprehensive . . . to demonstrate congressional intent to preclude the remedy of suits under § 1983." *Wright v. City of Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 424, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987)(*quoting Sea Clammers,* 453 U.S. at 20, 101 S.Ct. 2615).

In light of the foregoing, the Court concludes that based on WIA's statutory lan-

that the statute's savings clause precluded § 1983 actions for purely CETA based claims but not for federal constitutional claims. *See Page v. DeLaune,* 837 F.2d 233, 240 (5th Cir.1988); *Davis v. Mobile Consortium of CETA,* 857 F.2d 737, 741 (11th Cir.1988); *Black v. Broward Employment and Training Administration,* 846 F.2d 1311, 1312–1314 (11th Cir.1988). *But see Eastern Band of Cherokee Indians v. Donovan,* 739 F.2d 153, 158 (4th Cir. 1984); *Blitz v. Donovan,* 740 F.2d 1241, 1248 (D.C.Cir.1984)

This District Court addressed the matter under CETA in *Colon Collazo v. Cordero Santiago,* and held that exhaustion was required despite plaintiffs' procedural due process claims. 698 F.Supp. 30, 33–35 (D.P.R.1988). The facts of that case, however, differ substantially from the facts at hand. *Colon Collazo* dealt with audit reports and misuse of funds. Furthermore, the complaint's principal claim was that the prime sponsor in charge of CETA's administration had not acted according to the time frames established in the Act's regulations. Moreover, the parties had made use of the administrative mechanism available, therefore, the complete exhaustion of administrative remedies was warranted.

Applying the rationale of the CETA cases, the Sixth Circuit held in *AFSCME Local 506 v. Private Industry Council,* that there was no implied private right of action under § 1553(b)(3)(B) of the JTPA. 942 F.2d 376, 381 (6th Cir.1991). That section protected regular employees from being displaced by JTPA participants. Thus, the case dealt with a purely JTPA based claim rather than a federal constitu-

---

**2.** In *Casey v. Central Oregon Intergovernmental Council,* a constitutional rights case, the District Court of Oregon held that according to *AMSCME Local 506,* there is no private right of action under the JTPA and that CETA, did not give rise to a § 1983 claim. No.

Civ.98–1246 HA, 2002 WL 33201929 * 4 (Dec. 1, 2000). The Court cited *Davis* and *Uniformed Firefighters* to support its conclusion. The Court, nonetheless, dismissed the § 1983 claim on the grounds that plaintiff failed to prove supervisor liability.

guage, legislative history, and the cases decided under its predecessor statutes JTPA and CETA—, plaintiffs are not required to exhaust administrative remedies with regards to their First Amendment § 1983 claim.

### CONCLUSION

Accordingly, the Court **DENIES** defendants' motion to dismiss.

IT IS SO ORDERED.